JOSEPH J. MORRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14162. Promulgated October 26, 1948.

*H. F. Farrington, C. P. A.*, for the petitioner.
*J. Frost Walker, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: The first and primary issue in this case is whether the income from the partnership known as Morrisons Furniture Store for the calendar years 1942 and 1943 is taxable, with adjustments, in its entirety to petitioner, or whether it is taxable equally to all four members of the partnership, petitioner, his wife, and their two sons. The case is in many respects similar to *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293, decided by the Supreme Court in favor of the position here held by respondent.

In the *Tower* case the taxpayer transferred shares of stock of the corporation he controlled to his wife on the condition that she place the corporate assets represented by these shares into the new partnership of himself and his wife. The taxpayer, treating the stock transfer to his wife as a gift, later paid a gift tax on it. Three days after the stock transfer the corporation was liquidated and a partnership formed. According to the books the value of the donated stock became the wife's contribution to the partnership. In that case the Court said:

We do not need to decide this issue [whether the gift was ineffective for tax purposes because it was conditional and therefore incomplete]. The question here is not simply who actually owned the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property where he neither owns nor controls it. * * * The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership.

\* \* \* \* \* \* \*

There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182, 26 U. S. C. A. Int. Rev. Code, §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws.

In the case at bar petitioner's wife invested no capital originating with her. Out of her total capital contribution of $77,000, $67,000

was received by her as a gift from her husband simultaneously with the formation of the two-member partnership. The remaining $10,000 was received by her from her husband out of the profits of the business only a few days before the formation of the partnership, $4,000 as an outright gift and $6,000 as a purported "salary" for 1939. We can not, upon examination of the record, regard this $6,000 as a true salary and hence capital originating with Mrs. Morrison. 1939 is the only year in which Mrs. Morrison was ever paid a salary. By her own testimony her activities and duties in the business during 1939 were a mere continuation of her prior activities and duties in the business. Moreover, this money was allowed to remain in the business during the entire year of 1939, and immediately thereafter, upon the formation of the partnership on January 2, 1940, the entire $6,000 was invested in the business by Mrs. Morrison as part of her capital contribution.

Thus, looking at Mrs. Morrison's capital contribution of $77,000, we can say, in the language of the *Tower* case, "No capital not available for use in the business before was brought into the business as a result of the formation of the partnership."

Nor can it be said that Mrs. Morrison made a contribution to the building up of her husband's business to any greater extent than the ordinary wifely responsibilities would call for under similar circumstances. When the business was new in the early days of their marriage Mrs. Morrison assisted her husband at the store in such ways as her duties in the home would permit until their first child was born, and thereafter she assisted intermittently as her individual responsibilities permitted and the business needs required. The record fails to disclose any discussion of compensation of any kind being paid for her services.

Nor upon examination of the record can we find that petitioner's wife substantially contributed to the control and management of the business during the taxable years 1942 and 1943, the years at issue here. In this regard the case at bar is clearly distinguishable from the recent family partnership cases of *Weizer* v. *Commissioner*, 165 Fed. (2d) 772, 775 (CCA-6, Jan. 26, 1948), and *Woosley* v. *Commissioner*, 168 Fed. (2d) 330 (CCA-6, June 2, 1948), as well as from *Canfield* v. *Commissioner*, 168 Fed. (2d) 907 (CCA-6, July 12, 1948), in all of which decisions by this Court in favor of the Commissioner were reversed, the Circuit Court holding in each case that the wife was a bona fide partner for tax purposes with her husband.

Mrs. Morrison was a registered buyer and had, in her own words, made "several" purchases of interior decorating materials. But though she stated that she signed some checks for purchases, not a single such check was produced in court. The burden of proof is on petitioner to show that his wife was a partner with him, with a partner's

control of the business, and we can not find that he has sustained this burden. The Commissioner has determined that a salary of $600 was a reasonable compensation for her services, and there is not sufficient evidence in the record to refute this determination.

In contrast with the meager evidence of Mrs. Morrison's participation in the business, we have ample proof that petitioner was indeed its dominant figure. There is first the fact that he alone of the four partners gave full time to the business. There is next the fact that he signed most, perhaps all, of the checks for the partnership. Then there is the fact that his drawings from the partnership were considerably larger than those of his partners. To be sure, this money was repaid by him, but the fact remains that he was able to make these excessive drawings. Then it is significant that, when the partnership was finally dissolved and a corporation was formed, petitioner became its president at a salary of $15,000, whereas his wife's salary was only $7,000, and his sons', $900. All this evidence gives us a picture of a man who was not a partner, but, in reality, a sole proprietor.

Therefore, we must hold that the wife of petitioner was not his partner for tax purposes.

Nor is it possible to believe that the two sons of petitioner were, after the formation of the four-member partnership in 1941, partners in any real sense. These sons were at that time seventeen and sixteen years of age. They were still attending high school. Each continued to attend high school until about a month before he entered the naval service. During 1943 the younger son was still in school, and the older son was in school for half the year and in the Navy for most of the remainder of the year. Up to the time they became partners, the sons were paid for their services in the store at the rate of 25 cents an hour. Though there is some indefinite evidence to the effect that the duties of the sons increased in responsibility after the formation of the four-member partnership, the fact remains that they were able to give to the business only such time as they could spare from school. Their father, the petitioner, was at this time an experienced businessman who had run the business as a sole proprietorship for years. He was in the prime of life and able to give his full time and energies to the business. It can not be said that petitioner has sustained the burden of showing that his two sons controlled and managed the business as his partners.

Nor did the sons contribute to the partnership any capital originating with them. Their capital contribution at the time of the formation of the four-member partnership consisted entirely of the interests they received from their parents at that time and on which the parents paid gift taxes. As was said in the *Tower* case, "the result of the partnership was a mere reallocation of income among the family members."

In holding that the two sons of petitioner were not his partners for tax purposes, we are not unmindful of the recent case of *Culbertson* v. *Commissioner*, 168 Fed. (2d) 979 (CCA–5, June 30, 1948), reversing Tax Court memorandum opinion dated June 24, 1947. In that case, a partnership was formed as a result of a father buying out his partner and then, in pursuance of an express agreement with the retiring partner, selling this interest to his four sons, who gave their notes therefore. The Circuit Court, looking at the fact that the father's partner was ill and aging, that the sons had special interest and skills in cattle breeding, and that the father had, moreover, no reason to expect any imminent increase in profits, found that he had formed a partnership with his sons in good faith and not for the purpose of avoiding taxes. Furthermore, said the court:

When it is fully expected, intended, and agreed that the incoming partner will render services to the partnership, the government should not be heard to say: "I will not recognize you as a partner even though you in good faith entered into it. I took you into the Army to fight a war and you did not perform services for the partnership as you had agreed to do."

Petitioner in the instant case may have expected that his sons would eventually take over and run the business, as do fathers in many businesses. But the fact remains that the sons did not actually render services during the taxable years in question which would make them partners in a tax sense. Actually, the war did not affect the younger son's capacity to contribute services to the partnership at all during those years, 1942 and 1943, since he was not in the Navy until 1944; and the older son did not enter the Navy until mid-1943. Moreover, in view of petitioner's undoubted motive of tax-saving in setting up the partnership when he did, and in view of the extreme youth even of the older son and of the fact that the father was only thirty-nine at the time of the formation of the partnership, and in view of the experience and dominant role of the father in the business, it is highly doubtful whether the older son would have rendered such services during the latter half of 1943 even if a war had not intervened.

In view, then, of the important fact differences between the instant case and the *Culbertson* case, we can not regard the latter as controlling here, and we must hold that the sons were not partners with petitioner for tax purposes in this case.

On the second question, whether the deficiency for 1943 was determined within the time prescribed by law, petitioner contends in his petition that respondent:

* * * improperly and erroneously seeks to reallocate the partnership net income by an untimely Treasury Department letter issued from Buffalo, New York, on March 21, 1947, beyond the time limitation (March 15, 1947) when any such reallocation could have been made.

This contention of petitioner is without merit. The letter referred to was merely supplemental to the notice of deficiency and detailed the reallocation of partnership income. It was, moreover, addressed to the partnership. This proceeding is for the determination of petitioner's income and victory tax liability for the calendar year 1943. Therefore, the statutory period of limitation for the mailing of the notice of deficiency for 1943 expired on March 15, 1947, three years after the filing of the return by petitioner. The notice of deficiency was mailed to petitioner on March 14, 1947, as alleged by petitioner in his petition and admitted by respondent in his answer, and hence was timely.

We hold, therefore, that the Commissioner did not err in including the net income of the partnership, as adjusted by respondent, in the gross income of petitioner, and that therefore the determination of deficiency should be approved.

Reviewed by the Court.

*Decision will be entered for the respondent.*