Ray L. Batman v. Commissioner. Edith B. Batman v. Commissioner.Batman v. CommissionerDocket Nos. 17751, 17752.United States Tax Court1950 Tax Ct. Memo LEXIS 251; 9 T.C.M. (CCH) 210; T.C.M. (RIA) 50070; March 14, 1950*251 Upon the evidence, held: 1. Respondent did not err in determining that during the taxable years 1944 and 1945, there did not exist for income tax purposes a valid partnership between petitioner and his minor son in the operation of a farming and ranching business. 2. Petitioners' son, Gerald, was the owner during the years 1944 and 1945 of 176 acres of land from which $700 in rents was collected in each of the taxable years and was included in the alleged partnership income. These rents were the property of Gerald and are not includible in petitioners' income. 3. Respondent erred in disallowing certain deductions in 1944 and 1945 for the expense of operating a ranch in Kansas. 4. Respondent erred in disallowing in the years 1944 and 1945 certain deductions claimed for repairs and miscellaneous supplies, and did not err in disallowing in 1945 certain deductions for amounts expended for capital items. 5. Respondent erred in disallowing in the year 1944 an amount claimed for interest. 6. Respondent erred in disallowing in the year 1944 an amount claimed for labor. 7. Respondent did not err in disallowing in the year 1944 part of certain amounts claimed for travel and*252 other miscellaneous expenses, and erred in disallowing as a deduction in 1944 an amount paid for a newspaper subscription for the purpose of obtaining market reports. 8. Respondent did not err in adding to petitioners' income for each of the years 1944 and 1945 certain unreported deposits. Held, further, that petitioner is entitled to further deductions of $725 as ordinary and necessary business expenses which represented cash payments made in 1945 in thrashing his wheat and which had not been deducted elsewhere in his return. 9. Respondent erroneously disallowed certain depreciation in the year 1945. Arthur Glover, Esq., and Walter G. Russell, C.P.A., 310 Amarillo Bldg., Amarillo, Tex., for the petitioners. John W. Alexander, Esq., for the responden BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: These consolidated proceedings involve deficiencies in income tax as follows: DocketDeficiencyNo.19441945Ray L. Batman17751$4,225.94$9,125.89Edith B. Batman177524,043.978,860.90The deficiencies are due to numerous adjustments to the petitioners' net community income as disclosed by the returns for these years. The deficiencies are principally due to the respondent's determination that no valid partnership for income tax purposes existed between petitioner Ray L. Batman and his minor son, Gerald. Petitioners by appropriate assignments of error contest most of the adjustments made by the respondent for these years. No evidence was introduced*254 with respect to several issues raised by the pleadings, and it is assumed, therefore that these issues have been abandoned by the petitioners. In the interest of brevity we set forth the issues, make our findings of fact and render our opinion as to each issue separately. The petitioners, Ray L. Batman and Edith B. Batman, are husband and wife and reside in Perryton, Ochiltree County, Texas. For the calendar years 1944 and 1945, they filed their income tax returns with the Collector for the Second District of Texas at Dallas, Texas. They have two children, Lucille Batman and Gerald L. Batman; Lucille was born in 1928 and Gerald was born in July 1930. Ray L. Batman will hereinafter be referred to as petitioner. Issue 1. The question presented under this issue is whether during the taxable years 1944 and 1945 there existed a partnership, valid for federal income tax purposes, between petitioner and his minor son, Gerald, in the operation of a farming and ranching business. Petitioner was born in 1901 and from 1914 to 1923, he performed farm work in the wheat fields in various parts of the United States. Since 1923, he has been operating his own farm in Ochiltree County, Texas. *255 During the period 1930 through 1940, he owned some land and rented other land which he farmed. By 1942, he was farming over 3,000 acres of land, most of which he rented, and during 1942, he began to purchase most of the land that he farmed. On December 31, 1943, he owned approximately 2,336 acres of Texas farm and ranch land. On December 31, 1943, his cattle inventory was valued for tax purposes at $75,000 and his wheat inventory at $7,000. In 1944 and 1945, he owned approximately 4,076 acres in Ochiltree County, Texas, and 2,600 acres in Harper County, Kansas. Beginning in the summer of 1941, and during the years 1942 and 1943, Gerald worked on his father's farm doing various tasks. Since Gerald was attending school, he worked on the farm during summer vacations, weekends and during other vacation periods. During the harvest periods he operated a tractor which pulled a combine, plowed and performed such other tasks which he was physically capable of doing. At certain seasons of the year he worked nights and Saturdays and Sundays. He was never paid any wages for the work which he performed on the farm. After the harvest of 1941, petitioner transferred from his own herd, to his*256 son Gerald who was then 11 years old, 50 cows and 50 calves which were branded with Gerald's recorded brand. In April of 1942, Gerald executed a note to the First National Bank of Perryton in the amount of $2,300, which was endorsed by petitioner. This money was deposited to Gerald's account and was used to purchase 176 acres of land, the deed to which was taken in Gerald's name. This property was rented to a tenant during the years 1944 and 1945. On October 14, 1942, Gerald executed a further note for $4,461.45 from which was deducted interest in the amount of $174.36 and $1,784.60, (the balance outstanding on the above note of $2,300) leaving $2,502.50 which was deposited to his bank account. The amount of $2,502.50 was thereafter paid to petitioner for additional cows. On November 25, 1943, Gerald executed a note to the bank in the amount of $12,755.75 which was endorsed by petitioner the proceeds of which were used to buy an additional 100 calves at a cost of $11,804.10. The cattle which Gerald acquired were pastured on petitioner's land and were shipped and sold with petitioner's cattle. Gerald L. Batman filed an income tax return for the years 1942 and 1943, wherein he reported*257 net income in the respective amounts of $4,492.83 and $4,406.13. These amounts are not in issue in the present proceedings. He reported cattle inventory on January 1, 1942, in the amount of $5,000, and on December 31, 1942, in the amount of $11,425. In the return for the year 1943, he reported inventory at the beginning of the year in the amount of $11,425 and inventory at the end of the year in the amount of $23,411, which consisted of cattle inventoried at $22,711 and wheat inventoried at $700. During the year 1943 cattle sales of Gerald totaled $5,269.80. An inventory of property was filed in the Office of the Tax Assessor and Collector of Taxes in the County of Ochiltree, Texas, by Ray L. Batman on behalf of Gerald L. Batman for the years 1943, 1944 and 1945. In the inventory of property for the year 1943, it was stated that Gerald was then owner of 176 acres of land having a value of $1,320 and 50 head of cattle and 100 calves six months old. In the inventory for the year 1944, it was set out that Gerald was the owner of 176 acres of land having a value of $1,320, 200 head of cattle and 50 calves six months old. In the inventory for 1945, it was stated that Gerald was the owner*258 of 176 acres of land having a value of $1,300 and 200 head of cattle. An inventory of property was filed in the Office of the Tax Assessor and Collector of Taxes of the County of Ochiltree, Texas, by petitioner as an individual for the years 1943, 1944 and 1945. In the year 1943, he stated that he was the owner of 2,336 acres of land, 400 head of cattle and 550 calves six months old. In the inventory for the year 1944, he stated that he owned 4,076 acres of land, 500 head of cattle and 100 calves six months old. In the inventory for the year 1945, he stated that he was the owner of 4,076 acres of land and 500 head of cattle. In the latter part of 1943 or the early part of 1944, petitioner consulted D. L. Shelton, who was an accountant, relative to Gerald's becoming a partner. Petitioner stated that he was desirous of forming a partnership with Gerald as he wanted to combine their farming operations in order to simplify the handling of accounts and for the further reason that Gerald owned property in his own name and was doing the work of a man on the farm and ranch. Shelton advised petitioner against the formation of such a partnership because Gerald was a minor and the Treasury*259 did not look with favor upon alleged partnerships between a father and minor children. In January 1944, petitioner claims that he entered into an oral agreement with Gerald whereby it was agreed that he should be made a partner in petitioner's farming and ranching business. Petitioner claims that under the arrangement they were to combine their ranching and farming operations, and each was to contribute the use of his land, retaining the ownership of the fee. Petitioner was to receive two-thirds of the profits and Gerald one-third. At this time Gerald was in his 14th year and was in regular attendance at the public school. In March of 1944, petitioner informed the bank that he had entered into a partnership agreement with his son, Gerald, and that he wanted to change his personal account from Ray L. Batman to Ray L. Batman and Gerald L. Batman. Petitioner and his wife wrote substantially all the checks against the account during the years 1944 and 1945. Such withdrawals as were made by Gerald were in payment of income tax on his alleged distributive share of the partnership profits during the years 1944 and 1945, amounts due the bank on his personal loans and other withdrawals*260 of small amounts for items of a personal nature. On November 20, 1944, petitioner made application for a loan of $30,011.50 to the Canadian Valley Production Credit Association wherein he reported that in the year 1944 he was farming 2,640 acres of wheat, that he owned 1,900 acres of that land and would receive all of the crop; that he was renting 100 acres and would receive two-thirds of the crop and that 640 acres which he owned were leased and that he would receive one-third of the crop as rent. He further stated that part of his livestock consisted of 775 Hereford cows, seven or eight years old, and 100 cows, two years old. On April 14, 1945, petitioner made application to the Canadian Valley Production Credit Association for a loan in the amount of $30,599.57 wherein he reported that in 1945 he was farming 2,000 acres of wheat on land which he owned and that he had the entire interest of the crop and 640 acres which he owned were leased, and that he would receive one-third of the crop. He further reported that he owned 550 head of Hereford cows and 100 head of Hereford steers, two years old. He stated that the 100 Hereford steers were not included in the security to the credit*261 association "as Son has some interest in them." During the year 1945, petitioner constructed a grain elevator at Farnsworth, Texas, at a cost of approximately $159,000, in which petitioner invested approximately $80,000 in cash. This elevator was not claimed as a part of the partnership property as Gerald was a minor and the Federal Warehouse Administration did not recognize minors as partners. On September 15, 1945, petitioner conveyed to Gerald 320 acres of land located in Ochiltree County, Texas, for a stated consideration of $16,000. This conveyance was claimed as a part of Gerald's share of the partnership profits. In the year 1944, a partnership income tax return was filed reporting net income of $35,397.20, wherein it was reported that petitioner's share was $23,598.13 and Gerald's share was $11,799.07. In the year 1945, a partnership income tax return was filed reporting net income of $56,493.77, and stating that petitioner's share was $37,662.51 and Gerald's share was $18,831.26. In his income tax returns for the years 1944 and 1945, petitioner did not report as community income the respective amounts of $11,799.07 and $18,831.26 representing the share of the partnership*262 profits distributable to Gerald. In determining the tax liability of petitioners for the years 1944 and 1945, the respondent added these amounts to the community income reported under a determination that no valid partnership for income tax purposes existed between petitioner and his minor son, Gerald. Petitioner contends that by an oral agreement a valid partnership was formed with his son, Gerald, in 1944 for the conduct of the ranching and farming business and that this partnership was valid for both taxable years 1944 and 1945. Respondent, on the other hand, contends that all of the net income of the business was community income of petitioner and his wife because no bona fide partnership existed between petitioner and his son, Gerald, during the taxable years. The question of whether the partnership here in question is to be recognized for income tax purposes depends upon whether the parties, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the enterprise. Commissioner v. Culbertson, 337 U.S. 733. After a careful consideration of all the facts, we think this question must be answered in the negative. *263 It is true that some of the facts would seem to support petitioner's contention, but we must make our determination upon all the facts and when this is done, we are unable to agree that in the two taxable years which we have before us a valid partnership existed between petitioner and his minor son, Gerald. It seems to us that when petitioner's testimony (Gerald did not testify) concerning this alleged partnership is boiled down it amounts to about this: Petitioner decided to take Gerald, who was then about 14 years of age, in as a partner and undertook to do it without saying much to Gerald about it. In other words, it does not seem to us to have been an arm's length transaction between petitioner and Gerald but was more or less a unilateral transaction in which petitioner played the principal part and Gerald's part was passive. After the alleged partnership arrangement was made, petitioner, as before, managed and controlled the business. He completely dominated it and the income therefrom was largely earned by his efforts. Gerald took but little part in the active conduct of the business. In Joseph J. Morrison, 11 T.C. 696, affirmed 177 Fed. (2d) 361,*264 we said: "Petitioner in the instant case may have expected that his sons would eventually take over and run the business, as do fathers in many businesses. But the fact remains that the sons did not actually render services during the taxable years in question which would make them partners in a tax sense. Actually, the war did not affect the younger son's capacity to contribute services to the partnership at all during those years, 1942 and 1943, since he was not in the Navy until 1944; and the older son did not enter the Navy until mid-1943. Moreover, in view of the petitioner's undoubted motive of tax saving in setting up the partnership when he did, and in view of the extreme youth even of the older son and of the fact that the father was only thirty-nine at the time of the formation of the partnership, and in view of the experience and dominant role of the father in the business, it is highly doubtful whether the older son would have rendered such services during the latter half of 1943 even if a war had not intervened." On the basis of all the evidence, as we have already said, we conclude and find as a fact that Gerald was not a bona fide partner during 1944 and 1945 with*265 petitioner in the conduct of the farmining and ranching business within the meaning of Commissioner v. Culbertson, supra. Cf. Joseph J. Morrison, supra; Economos v. Commissioner, 167 Fed. (2d) 165, certiorari denied 335 U.S. 826. We, therefore, sustain the Commissioner on this issue. Issue 2. Petitioner, in his petition, has assignments of error in the alternative, as follows: "(n) In the alternative, Commissioner erred in failing to allow to petitioner and wife a deduction in 1944 and 1945 for the reasonable value of services rendered to the partnership, Ray L. Batman and Gerald L. Batman, by Gerald L. Batman during said period. "(o) In the alternative, Commissioner erred in failing to allow to petitioner and wife a deduction in 1944 and 1945 of a reasonable crop rental for lands used by the partnership, Ray L. Batman and Gerald L. Batman, which lands were owned by Gerald L. Batman. "(p) In the alternative, Commissioner erred in failing to allow to petitioner and wife a deduction in 1944 and 1945 for the profits realized from grain and cattle owned by Gerald L. Batman and sold by the partnership,ray L. Batman and Gerald*266 L. Batman in 1944 and 1945." Although petitioner makes these alternative assignments of error in his petition, he does not argue them in his brief. However, he does not expressly state that he has abandoned them. We shall, therefore, treat them as still pending. With reference to these foregoing assignments of error in the alternative, we make the following findings of fact: The 176 acres of land which were taken in Gerald L. Batman's name in April 1942, were owned by Gerald and were rented to a tenant throughout the years 1944 and 1945. The only income from the 176 acres was one-third of the wheat crop, plus payments from the Agricultural Adjustment Administration. This payment in 1943 was $85.34 and was approximately the same amount in each of the years 1944 and 1945. The rent and Government payment from this 176 acres of land amounted to as much as $700 in each of the years 1944 and 1945. This $700 in each of the taxable years belonged to Gerald and was not a part of petitioner's income. In the tax return which Gerald filed for 1943, he reported an inventory of cattle at the end of the year 1943 of $22,711 and findings of fact under Issue 1 show how these cattle had been acquired*267 by Gerald. These cattle were owned by Gerald. The facts in evidence do not enable us to make a finding of how many of these cattle were sold in the two taxable years which we have before us and how much profit, if any, was derived from such sales. Gerald did render some services to his father in the farming and ranching business during the taxable years 1944 and 1945. The nature of these services has been described in our findings under Issue 1. There is not sufficient evidence from which we could make a finding as to their value. We, therefore, express no opinion as to whether the value of such services would be deductible by petitioner, if proved. Therefore, to sum up, we hold that Gerald was the owner of the 176 acres of land which was acquired in his name in 1942 and that the $700 income therefrom in each of the years 1944 and 1945 did not belong to petitioner but was the property of Gerald. Petitioner is, therefore, sustained in his alternative assignment of error (o). As to alternative assignment of error (n) petitioner is not sustained because, as we have said, we are unable to make any finding from the evidence as to the value of the services rendered by Gerald in the taxable*268 years 1944 and 1945. As to alternative assignment of error (p) petitioner is not sustained because we are unable to make any findings from the evidence as to what cattle owned by Gerald were sold in 1944 and 1945, and what profits, if any, resulted from such sales if any, in fact, were made. Issue 3. The question here is whether the respondent erred in failing to allow as deductions for the years 1944 and 1945, Kansas ranch expenses in the respective amounts of $630.71 and $1,291.77. In its return for the taxable year 1944, the partnership deducted the amount of $2,110 as "Kansas Ranch Expense" of which the respondent disallowed the amount of $1,482.70. Petitioner alleges that the respondent erred in disallowing Kansas ranch expenses for the year 1944 to the extent of $630.71. In the partnership return for 1945, there was deducted the amount of $3,396.13 as "Miscellaneous Farm Expense." The respondent disallowed the amount of $1,180 of this which was claimed as Kansas ranch expense. The revenue agent's report says of this Kansas ranch expense, as follows: "On the return this amount is included in the miscellaneous farm expense, which totals $3,396.13. The entire amount claimed*269 as 'Kansas Ranch expense' in 1945 is here being disallowed as no evidence was ever introduced to substantiate any part of this expense." Petitioner alleges that the respondent erred in failing to allow Kansas ranch expenses in the amount of $1,291.77 for the year 1945. In the year 1941, petitioner purchased a ranch in Kansas consisting of approximately 2,600 acres. In the years 1944 and 1945, he employed his brother-in-law, Harper Wilson, to manage the ranch and paid him a salary of $60 per month. The amounts for his salary and for operating expenses of the ranch were drawn by Wilson by draft against the partnership bank account.during the year 1944, Wilson drew on the partnership bank account drafts totaling $720 in payment for his services and further drafts in the amount of $1,450 were drawn for ranch purposes. Of the amount of $1,450, the sum of $800.22 was paid for the installation of a water pipe line to supply water for ranch purposes. During the year 1945, Wilson drew on the partnership bank account and there were paid to him 13 drafts in the amount of $60 each, two drafts of $100 each and one draft in the amount of $200. As above stated, the evidence shows that during*270 the year 1944, drafts totaling $2,170 were drawn against the partnership account. At the end of the year there was a balance on hand on account of said drafts in the amount of $111.77, leaving the amount of $2,058.23 which was expended for Kansas ranch purposes. Of this amount there was expended the sum of $800.22 for the installation of a water pipe line which petitioner concedes was a capital expenditure, leaving a balance of $1,258.01 which petitioner maintains was expended for labor, supplies and repairs and is a deductible business expense. Respondent has allowed ranch expense in the amount of $627.30 for the year 1944, leaving the amount of $630.71 which is in dispute. We are convinced from the evidence here that the amount of $1,258.01 was expended for labor, repairs and supplies for the operation of the ranch and is deductible as an ordinary and necessary business expense for the year 1944. In a recomputation under Rule 50, $1,258.01 should be allowed as a deduction for ordinary and necessary business expenses incurred and paid in 1944 in the operation of the Kansas ranch property. This amount should be allowed in lieu of the amount which the Commissioner did allow in his computation*271 of the deficiency for 1944. As has already been said, petitioner contends that the respondent erroncously failed to allow Kansas ranch expenses in the amount of $1,291.77 in the year 1945. The evidence shows that Wilson was paid the amount of $60 a month as compensation for managing the Kansas ranch, or a total $720of for the year, which we hold is deductible as an ordinary and necessary business expense. We are convinced that an additional amount of $400 was expended for miscellaneous supplies and repairs in connection with the operation of the Kansas ranch and is deductible as ordinary and necessary business expenses. In a recomputation under Rule 50, $1,120 should be allowed as a deduction for ordinary and necessary business expenses incurred and paid in 1945 in the operation of the Kansas ranch property. The Commissioner did not allow anything for Kansas ranch expense in his determination of the deficiencies for the year 1945. Issue 4. The question here is whether the respondent erred in disallowing as deductions for the years 1944 and 1945, the respective amounts of $1,504.69 and $1,386.49 and in determining that these amounts were capital expenditures. This has to do with*272 petitioner's Texas ranch property. In the year 1944, petitioner expended the amount of $75 for an air compressor, $290 for welding repairs, $332 for the replacement of a butane tank and $25 for a used radio. In the year 1945, petitioner expended the following amounts: $321.23 for miscellaneous items such as belt dressing, nails, bolts, pails, brooms and small tools; office supplies, $29.95; a truck tire, $30.38; miscellaneous repairs, $27.86; feed, $105.24; oxygen for welding equipment, $52.50 and $293.65 as compensation to the manager of petitioner's grain elevator at Lord, Texas. During the year 1945, petitioner also expended the amount of $345.98 for sand for the purpose of constructing a foundation for a house on property owned by the manager of his elevator at Lord, Texas. Petitioner also furnished 105 feet of one-inch pipe at a cost of $14.70 which was used in the construction of the house on the above-mentioned property. These items were furnished under an arrangement whereby petitioner was to acquire an interest in said building. Petitioner also expended the amount of $18.75 for a gas heater used for heating purposes. The question of whether the above expenditures may*273 be classed as business expenses or were capital in nature is essentially one of fact. If the result of the expenditure is the acquisition of an asset which has an economically useful life beyond the taxable year or where the expenditure is for replacements, improvements or additions which appreciably prolong the life of the property and increase its value, it is a capital expenditure; whereas, if the expenditure is of a recurring nature where the benefit derived is realized and exhausted within the taxable year, or where the expenditure is for the purpose of keeping the property in an ordinary efficient operating, useful or serviceable condition over its probable useful life, it is an ordinary and necessary business expense. See W. B. Harbeson Lumber Co., 24 B.T.A. 542; American Bemberg Corporation, 10 T.C. 361, affirmed 177 Fed. (2d) 200; J. E. Mergott Co., 11 T.C. 47. We hold that the amounts $75of expended for an air compressor, $332 for the replacement of a butane tank and $25 expended for a used radio are capital expenditures since they have a useful life in excess of one year. We are convinced that the amount of $290*274 was spent for welding repairs to petitioner's farm equipment in order to keep it in serviceable condition and is an ordinary and necessary business expense and should be allowed as a deduction in the taxable year 1944. The Commissioner has disallowed $1,504.69 for 1944 which petitioner claimed as ordinary and necessary business expenses and has determined that amount was expended for capital assets. The effect of our findings herein made as to these items for 1944 is to find that only $290 was proved by petitioner to be ordinary and necessary business expenses. The Commissioner is, therefore, sustained in his disallowance of the $1,504.69, except as to this $290. We are also of the opinion that the above amounts expended in the taxable year 1945 for such miscellaneous items as belt dressing, nails, bolts, brooms, small tools, and a tire are ordinary and necessary business expenses and should be allowed as a deduction in 1945. See Regulations 111, section 29.23(a)-11. These are continuously used in the business of farming and have a useful life of less than a year. We further hold that the amounts expended for office supplies, miscellaneous repairs, oxygen used for welding purposes, *275 feed, and wages are ordinary and necessary business expenses and should be allowed as deductions in 1945. The amount of $18.75 expended for a gas heater is a capital expenditure since it has a useful life in excess of one year. We do not think, however, that the amounts expended for sand and for 105 feet of pipe which were to be used in the construction of a house on property owned by an employee were a business expense. The record discloses that these items were furnished by petitioner to his employee under an arrangement whereby he was to have some interest in the property but the employee was subsequently discharged and there was no evidence as to what arrangement was made with respect to these items. The Commissioner has disallowed $1,386.44 for 1945 which petitioner claimed as ordinary and necessary business expenses and has determined that amount was expended for capital assets. The effect of our findings herein made as to these items for 1945 is to find that $860.91 was proved by petitioner to be ordinary and necessary business expenses. The Commissioner is, therefore, sustained in his disallowance of the $1,386.44. except as to this $860.91. Issue 5. The question here*276 is whether the respondent erred in disallowing a deduction. for interest in 1944 in the amount of $700. The applicable statute is section 23(b) of the Internal Revenue Code. In the year 1944, petitioner was indebted on three promissory notes, each in the principal amount of $7,411.11, dated September 14, 1943, the notes being payable one year, two years and three years after date. The notes bore interest at the rate of 4 1/2 per cent per annum, payable annually on September 14th in each year. On or about October 15, 1944, petitioner paid the amount of $869.57 as interest on this indebtedness. Respondent disallowed the amount of $700 as being "Interest paid overstated." Respondent in his brief concedes that petitioner is entitled to the deduction of $700 for interest paid in 1944 which he has disallowed in his determination of the deficiency. Effect will be given in a recomputation under Rule 50 to this concession by respondent. Issue 6. The question here is whether the respondent erred in disallowing a deduction of $375 taken by the partnership in 1944 for labor. Petitioner during the taxable year purchased a war bond in the principle amount of $500 for which*277 he paid $375. Petitioner presented the bond to James Lollis, who was employed by him as the manager of his farm and ranch business at Perryton, Texas. Lollis had been employed by the petitioner for approximately seven years and was a hard-working, capable employee. Respondent contends that the bond was presented to Lollis as a gift, while petitioner, on the other hand, contends that the bond was presented to Lollis as additional compensation for services, past and present. In determining whether the bond presented to Lollis was a gift or compensation for services, the controlling test is the intention of the parties gathered from all the facts and circumstances surrounding the transaction and particularly that of the transferor. Estate of Grace G. McAdow, 12 T.C. 311; Bogardus v. Commissioner, 302 U.S. 34; Willkie v. commissioner, 127 Fed. (2d) 953, certiorari denied 317 U.S. 659. What are the circumstances revealed in this record? As pointed out above, Lollis has been employed by petitioner for approximately seven years and was manager*278 of his farm and ranch at Perryton, Texas. He was a capable and hard worker. Petitioner testified that Lollis had done a lot of work and thought that he was entitled to the bond. The transfer was treated as compensation by the partnership in its return for the taxable year 1944. We think the evidence shows that petitioner intended the transfer of the bond as additional compensation to Lollis. The respondent, therefore, erred in disallowing the amount of $375 for labor. Issue 7. The question here is whether the respondent erred in determining that the amount of $482 deducted in the partnership return for the year 1944 was personal expenses of the petitioner. In the year 1944, the petitioner withdrew from the partnership bank account the amount of $400 which was deducted on the partnership return for that year as miscellaneous expenses. Petitioner was required to travel occasionally in carrying on his business and this money was used for this purpose, as well as for the purchase of various items which petitioner purchased on these trips. Petitioner in 1944 purchased a cow pony for which he paid $75. This pony was used in the ranching business and had a useful life of five years. *279 Petitioner in 1944 paid the amount of $7.00 for a year's subscription to the Wichita Beacon primarily for the purpose of its marketing reports. Respondent disallowed the deduction of these items, totaling $482 with the explanation "Personal expense." He argues on brief that petitioner has not offered evidence in support of his contention that the amount of $400 was a business expense, that the amount of $7.00 paid to the Wichita Beacon was a personal expense and that the amount of $75 paid for a cow pony is a capital expenditure. Petitioner testified that he expended the amount of $400 for expenses incurred on the occasional business trips which he took and for the purchase of various items that he would see on these trips which were scarce and which he needed. There is no very clear evidence from which we are able to determine what amounts petitioner expended for travel expenses in his business. We are convinced that he did some traveling which was necessary in carrying on his business. Therefore, applying the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, we find that petitioner expended $200 for traveling expenses in his business which should be allowed as a deduction. *280 The remainder of the $400 which he claims is disallowed for lack of evidence. Petitioner concedes that the amount of $75 paid for a cow pony is a capital expenditure. We hold that the amount of $7.00 paid for a year's subscription to the Wichita Beacon is deductible as a business expense. Petitioner subscribed to the publication primarily for its market reports and it was, therefore, related to his business of farming and ranching. Issue 8. In his determination of the deficiencies, the respondent added to the income reported on the partnership returns unreported deposits of $1,197 for 1944 and $7,667.16 for 1945. As to these adjustments made by the Commissioner, petitioner assigned errors as follows: "(f) In computing the net income of the partnership firm, Ray L. Batman and Gerald L. Batman, for the year 1944, the Commissioner erroneously overstated said net income in an amount of $1,197.00, designated by Commissioner as 'unreported deposits'. "(h) In computing the net income of the partnership firm, Ray L. Batman, and Gerald L. Batman, for the year 1945, the Commissioner erroneously overstated said income in the amount of $830.00, designated by Commissioner as 'unreported*281 deposits'." As to assignment of error (f) petitioner offered no evidence at all and does not mention it in his brief. The Commissioner is sustained in adding this $1,197 to petitioner's income in the year 1944 for lack of any evidence to show that it was error. As to assignment of error (h) it will be seen that it does not specifically assign error as to the Commissioner's action in adding to petitioners' income in 1945, $7,667.16, as "unreported deposits." What it does do is to in effect admit that respondent was correct in adding this to income but that he should have allowed an additional deduction of $830 as ordinary and necessary business expenses. In arguing this assignment of error in his brief, petitioner says: "In the year 1945, the partnership firm of Ray L. Batman and Gerald Batman withdrew, in cash, from deposits, the total sum of $830.00, which amount was used to pay expenses incurred in the operation of the business of said partnership; under the provisions of Sections 22 (a) and 23 (a) (1) (A) of the Internal Revenue Code, such amount was reportable as income of said partnership and deductible as expense of said partnership. "On June 27*282 and 28, 1945, there were deducted from deposits to the partnership account of Ray and Gerald Batman the sums of $525.00 and $200.00. These amounts were paid to custom workers for services rendered to the business of the partnership. Custom workers are itinerants who pay their bills while in transit by cash and usually find it convenient to have cash paid to them for their work and thus save the trouble of going into town, establishing their identity, etc. The evidence in this respect is uncontroverted and wholly worthy of belief. "The two withdrawals constituting the balance of this $830.00 was used to pay cash expense of the partnership firm. "These withdrawals are not reported as income nor deducted as expense, and they should not be placed to income without making an expense deduction." The revenue agent's report which was adopted by the Commissioner and made the basis of his determination of the deficiencies for the years 1944 and 1945, explains this adjustment of "unreported deposits" for 1945 of $7,667.16, as follows: The individual items consisting of this adjustment are as follows: 1- 9-45$6,837.162- 6-4530.006-27-45525.006-28-45200.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.00$7,667.16*283 "The deposit of 1-9-45 was claimed by the taxpayer to have been included in the income for 1944. This fact could not be proven and this sale of wheat is therefore considered to be income in 1945. The other three items are reductions in deposits, wherein a series of checks are listed on the deposit slips, totaled, a notation of 'less cash' made and the balance of the deposit is reported as income." As has already been stated, petitioner does not now contest the Commissioner's action in adding this $7,667.16 to income in 1945. What he in effect contends is that he should be allowed an additional deduction over that contained in the partnership return for 1945 of $830 as expenses of operating the farm and ranch. He lists these items as follows: February 6, 1945$ 30.00September 10, 194575.00June 27, 1945525.00June 28, 1945200.00Total$830.00From petitioner's testimony we have concluded that he did pay out the two above items of $525 and $200, respectively, in cash to the owners of combines who were harvesting his wheat and did not elsewhere deduct these items as expenses. While we sustain the Commissioner in adding to petitioner's income for 1945*284 the unreported bank deposits of $7,667.16, we also hold that petitioner is entitled to an additional deduction over that claimed in the partnership return of $725 incurred and paid in 1945 in harvesting his wheat. The other two items of $30 and $75 which petitioner claims as additional deductions we do not think have been substantiated and they are not sustained. Issue 9. The question presented under this issue is the proper amount of depreciation to which petitioner is entitled in 1945. During the year 1945, petitioner constructed a grain elevator at Farnsworth, Texas, and installed therein the necessary machinery and equipment. Possession of the elevator was turned over to petitioner by the contractors on August 1, 1945. Some work, such as adjustment of machinery and items of a minor nature, was performed on the elevator after August 1, 1945. Some wheat was stored in the elevator on or about August 1, 1945. In computing petitioner's deficiency for the year 1945, the respondent disallowed depreciation in the amount of $754.37. Petitioner alleges that the respondent erred in understating depreciation to the extent of $761.74. The dispute herein is as to the date from which depreciation*285 should be computed. Petitioner contends that depreciation should be computed from August 1, 1945, while respondent contends that depreciation should be computed from October 1, 1945. We are convinced from the evidence herein that depreciation on petitioner's elevator and equipment should be computed from August 1, 1945. While some work was done on the elevator after August 1, 1945, the evidence shows that it was of a minor nature. On the other hand, the record shows that possession of the elevator was turned over to petitioner on August 1, 1945, and was ready for operation and some wheat was placed therein. Apparently in computing depreciation on this elevator property, petitioner has included the cost of the land, $800. That, of course, should not be included in the depreciation base. Depreciation on the buildings and equipment should be computed at the rates used by petitioner from August 1, 1945, to the end of the year. Petitioner does not dispute the correctness of the small depreciation disallowance which the Commissioner made for 1944 and that disallowance will remain as determined by the Commissioner. Decisions will be entered under Rule 50.