## BATMAN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13386.

United States Court of Appeals
Fifth Circuit.

May 22, 1951.

Rehearing Denied Aug. 7, 1951.

Arthur Glover, Walter G. Russell, Amarillo, Tex., for petitioner.

George D. Webster, Ellis N. Slack, Helen Goodner, Francis W. Sams, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, W. Herman Schwatka, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

The commissioner determined deficiencies in petitioners' income taxes for the calendar years 1944 and 1945, mainly due to his conclusion that no valid partnership for income tax purposes existed between petitioner Ray L. Batman and his minor son, Gerald.

The tax court, upon a petition for redetermination, sustained this determination and failed to reduce substantially the deficiencies found.

Petitioners, constituting a Texas community of husband and wife, are here seeking relief from the redetermination.

Two questions are presented.

One of these is whether, as contended by petitioners, income, attributed to them by commissioner and tax court, was in fact earned by a partnership composed of petitioner Ray L. Batman and his fourteen year old son, Gerald L. Batman, claimed by petitioners to be existing and valid for tax purposes.

Another is whether, if commissioner and tax court are right and petitioners wrong, as to the partnership claim, the tax court erred in taxing all of the income to peti-

tioners as earned by them, instead of taxing part of it to Gerald L. Batman as earned by him, or as the fruits of his services or properties.

In determining the first question, whether the income for the years in question was earned, not by the claimed partnership, but by the petitioners individually, the tax court first set out in detail the testimony,[1] all of which came in without contradiction. It next declared that the question of whether the partnership for the years in question is to be recognized, for income tax purposes, depends upon whether the parties in good faith, and acting for a business purpose, intended to join together as partners in the conduct of the enterprise. Finally, declaring, after a detailed and careful consideration of all the facts: "We think this question must be answered in the negative", the court then went on to say:

"It is true that some of the facts would seem to support petitioner's contention, but we must make our determination upon all the facts and when this is done, we are unable to agree that in the two taxable years which we have before us a valid partnership existed between petitioner and his minor son, Gerald. It seems to us that when petitioner's testimony (Gerald did not testify) concerning this alleged partnership is boiled down it amounts to about this: Petitioner decided to take Gerald, who was then about 14 years of age, in as a partner and undertook to do it without saying much to Gerald about it. In other words, it does not seem to us to have been an arm's length transaction between petitioner and Gerald but was more or less a unilateral transaction in which petitioner played the principal part and Gerald's part was passive. After the alleged partnership arrangement was made, petitioner, as before, managed and controlled the business. He completely dominated it and the income therefrom was largely earned by his efforts. Gerald took but little part in the active conduct of the business. * * *

"On the basis of all the evidence, as we have already said, we conclude and find as a fact that Gerald was not a bona fide partner during 1944 and 1945 with petitioner in the conduct of the farming and ranching business within the meaning of Commissioner v. Culbertson, supra [337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659]. Cf. Morison [v. C. I. R.], 11 T.C. 696, affirmed [2 Cir.], 177 F.2d 351; Economos v. Commissioner [4 Cir.], 167 F.2d 165, certiorari denied 335 U.S. 826 [69 S.Ct. 53, 93 L.Ed. 380]. We, therefore, sustain the Commissioner on this issue."

Petitioners insist that the tax court allowed to bulk too largely: the extreme youth of their son; the fact that petitioner Ray Batman was the exclusive head and manager of the business; and that their son, if a partner, was only a silent one; and thus the picture as a whole was obscured. They urge upon us that the result has been to deny to an arrangement, the making of which nobody denied, its

1. This included a statement of Gerald's interest in, and his working at, farm work from the time he was old enough and strong enough to work; the fact that when he was eleven years old his father had transferred to him fifty cows and fifty calves, and branded them in his brand; and his further activities including the acquisition, with his father's aid, of more land and cattle.

It included, too, a showing of the greatly expanding earns and ownings of the father, his discussion, in the latter part of 1943 and the early part of 1944, with an accountant relative to Gerald's becoming a partner, and Shelton's advice against it; petitioner's testimony that in 1944 he entered into an oral agreement with Gerald, wherein it was agreed that he should be made a partner in petitioner's farming and ranching business, petitioner to receive two-thirds of the profits and Gerald one-third, Gerald at that time being in his fourteenth year; his further testimony that he had informed the bank of the partnership and that he wanted to change his account from Ray Batman to Ray L. Batman and Gerald Batman; the fact that all checks that were drawn on the fund were drawn individually and not by the partnership, and that his wife and he drew most of the checks; those drawn by Gerald being in the main small personal ones; and a further detail of transactions had and done in the years in question and afterward.

just and natural consequences as a partnership, valid for business, and, therefore, for tax purposes.

The commissioner, on the other hand, insists that this is just another of those over thrifty and under candid arrangements made by a family conscious head of a community, for further familial sharing, under the magic name of partnership, of the benefits and burdens of the income earned by him. He, therefore, urges upon us that, whatever the pretended business purposes, benefits, and results may be, or have been, it must be found and held that this partnership in name only had as its prime, its main, motivation and objective, to protect and increase the family fortunes and solidarity by decreasing the taxes which the family, through its earning head, would otherwise have to pay. He insists, in short, that this is just another variation of the schemes condemned in Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Scherf v. Commissioner, 5 Cir., 161 F.2d 495, and similar cases, to separate the tree from its fruit, the earner from his income.

We agree. But for the partnership label affixed to it by the father, the inventor, creator, and *deus ex machina* of the plan for increasing his family's net earnings by decreasing the taxes accruing on them, no one would have any difficulty in seeing the arrangement for what it is, another attempt of the earner of the income to have his cake and eat it too, vicariously, indeed, for the present through his son.[2]

In the Scherf case, supra [161 F.2d 497], we pointed this out:

"In determining tax consequences arising out of efforts to form partnerships, therefore, analogies are to be mainly sought and found not in cases dealing with corporations and their business activities but in those dealing with individuals and their business activities. If this is so, and we think that it may not be doubted that it is,

it ought to be clear that the device of using the partnership form to separate the tree from its fruits, the earner from the income, will be no more effective in fact and in law than similar and related schemes of individuals have been. Textbooks and decisions on tax law are strewn with the wrecks of abortive schemes of individuals to achieve the greatly desired end of dividing their income for tax purposes with persons who did not earn it.

"Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 * * * are leading cases establishing the rule that 'the dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid.' The Tower [(Commissioner v. Tower), 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670], and Lusthaus [(Lauthaus v. Commissioner), 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679] cases merely apply the rule to situations where the Tax Court has found that individuals are attempting through pseudo-partnerships to do the forbidden thing, separate earner from income, the tree from its fruits."

The Supreme Court, in the case of Commissioner v. Culbertson, 337 U.S. at 733 page 745, 69 S.Ct. 1210, at page 1216, followed the same line, saying:

"In the Tower and Lusthaus cases this Court, applying the principles of Lucas v. Earl, supra; Helvering v. Clifford, supra [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788]; and Helvering v. Horst, supra, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, found that the purported gift, whether or not technically complete, had made no substantial change in the economic relation of members of the family to the income. In each case the husband continued to manage and control the business as before, and income from the property given to the wife and invested by her in the partnership continued to be used in the business or expended for

---

2. "Q. Why was a one-third, two-thirds arrangement made on the share of the profits? A. I thought it was a fair set up on it.

"Q. You mean in light of what, Mr. Batman? A. In the light of what property that he had, and everything else.

"Q. I see. A. One thing that entered into it, there was three children and he was just the one, and we will probably give our others later on, offset it with the other kids when they get older."

family purposes. We characterized the results of the transactions entered into between husband and wife as 'a mere paper reallocation [of income] among the family members,' noting that 'The actualities of their relation to the income did not change.' [327 U.S. at page 292, 66 S.Ct. 532.] This, we thought, provided ample grounds for the finding that no true partnership was intended; that the husband was still the true earner of the income.

"But application of the Clifford-Horst principle does not follow automatically upon a gift to a member of one's family, followed by its investment in the family partnership. If it did, it would be necessary to define 'family' and to set precise limits of membership therein. We have not done so for the obvious reason that existence of the family relationship does not create a status which itself determines tax questions, but is simply a warning that things may not be what they seem. It is frequently stated that transactions between members of a family will be carefully scrutinized. But more particularly, the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used. He is able, in other words, to retain 'the substance of full enjoyment of all the rights which previously he had in the property.' Helvering v. Clifford, supra, 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788."

The confidence with which the taxpayer argues his case, the apparent difficulties attending the pointing out of its weaknesses, all proceed from the simple fact that sometimes, because of its very obviousness, it is difficult to see clearly a fact which, once seen, looms so large and is so unmistakable that the wonder is it was not seen, and its significance understood, long before.

This is just another of those cases, however, common in the law, as in other matters, where, having given a name to a set of facts, consequences are attributed to the name or label, as used, which are entirely foreign to the subject matter labeled. This has been nowhere better pointed out than in Guy v. Donald, 203 U.S. 399, 27 S.Ct. 63, 64, 51 L.Ed. 245, where the name "partnership" was invoked as a magic talisman to impose upon members of the Virginia Pilot Association, liability for damages, for the negligence of one of its members. After setting out the question certified, the court, through Mr. Justice Holmes, declared: "The questions certified very properly go beyond the question of the existence of a partnership. As long as the matter to be considered is debated in artificial terms there is a danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied."

Then, setting out the facts relied on for the imputation of liability, and declaring that it was the facts and the general principles of liability, and not the label affixed to them, which determined it, pointed this up by saying: 'Now, we are not curious to inquire what form of test shall be accepted as the most profound for the existence of a partnership when considering liability for debts; but it is plain that when we are considering a liability for torts under the circumstances supposed no stricter or different criterion ought to be applied than in those cases where agency is the admitted ground. *The rule, however stated, presses to the verge of general principles of liability. It must not be pressed beyond the point for which we can find a rational support."* (Emphasis supplied.)

If courts and judges were a little wiser, or not quite so wise; if we could see, as we should see, face to face, or, though not as through a glass darkly, not quite so clearly as we sometimes erroneously think we see; if we fully understood semasiology and the uses and abuses of words; we should be as little troubled, should have as little difficulty, in piercing through the name "partnership" to the facts in family partnership cases as the court had in Guy v. Donald, supra. If knowing, or using, a little less of technical legal reasoning, we knew and used a little more of common sense; if, as the child, in the story of the Emperor's Garment, saw through the pre-

tense to the fact, that the Emperor in reality had no garment on; if, in short, we could see this case, as it really is, we could easily see that what is presented as a partnership here is really not one at all. It is merely an arrangement for shoring up and expanding the family fortunes at the expense of the tax collector.

Looking at the case in this way, we can see at once our difficulties and the way out of them. Our difficulties come from overlooking, or rather from not according its true weight to, the family ties and interests. Our way out is in according them their true weight.

So proceeding, we will have no trouble in seeing that here is no business organization, no true partnership with the end and aim in view of creating and sharing business benefits and burdens. Here is a purely familial arrangement entered into not upon considerations of really shared business burdens and benefits but upon those of strengthening and extending the family fortunes and ensuring its continuing solidarity by reducing its tax burdens. It must, therefore, be truly said of it, here is no partnership; here is only a family scheme for tax avoidance by anticipatory assignment of income under the pretense of forming and conducting a partnership.

Now this is not at all to say: that a family arrangement may not also be a family partnership; that members of families cannot enter into real business partnership agreements to the same extent that other persons can and do. It is to say, though, that just as easily as the courts, in Lucas v. Earl, and Saenger v. Commissioner, 5 Cir., 69 F.2d 631, struck down the scheme and device for separating the income from the earner, the tree from its fruits, when it was the assignment, without benefit of the partnership form, of the future earnings of an individual, so will the courts strike down pseudo-partnerships like the one gotten up here, where it is plain that the partnership is not a real one, but a sham, entered into, not in good faith for business reasons and purposes but as a pretense to attain the familial end of lessening the family's tax burdens. Scherf v. Commissioner, supra.

On the issue of partnership, then, we are in no doubt that the judgment of the tax court was right, and that it should be affirmed.

On the subsidiary issue, the failure to attribute to Gerald, rather than to petitioners, the earnings of himself and his property, we are also of the opinion that, for the reasons given by the tax court, that there was no basis in the evidence for determining the amount of the income which should be allocated to Gerald as earned by him or should be allowed to the petitioners as deductions for amounts paid to him as services, the ruling was right. The burden was upon the petitioners to establish their right to this alternative relief. They took no steps to recognize or meet this burden by showing what amount was due him, if any, for the sporadic work he did for the family unit, and particularly they took no steps to show that he worked under an agreement for pay. Instead, their whole insistence was upon the contrary theory, that there was a partnership, that nothing was due Gerald for his rents or his services because, as a partner, he shared in the profits to the extent of $11,799.07 and $18,831.26, in contrast with the $150.00 a month paid Follis, the farmhand with whom Gerald worked at times.

In these circumstances, the court was clearly right in declaring that the record furnished no basis for awarding alternative relief beyond the $700 rental which it did award him. Its findings and decision on the alternative relief claimed must, therefore, be affirmed.

The findings and order were right throughout. They are

Affirmed.