**SCOTT v. SELF, Acting Collector of Internal Revenue.**

**No. 2298.**

United States District Court
E. D. Arkansas, W. D.

Dec. 18, 1952.

Pat Mehaffy, Raymond Morris, William J. Smith and William H. Donham, of Little Rock, Ark., for plaintiff.

Lester L. Gibson, Asst. Atty. Gen., R. D. Smith, Jr., Asst. U. S. Atty., Marianna, Ark., and James T. Gooch, U. S. Atty., Little Rock, Ark., for defendant.

TRIMBLE, Chief Judge.

This is an action for the recovery of income taxes and statutory interest which plaintiff alleges were erroneously and illegally assessed as a deficiency, for the calendar year, 1943, by the Commission of Internal Revenue. The amount sought to be recovered is $12,909.04, with interest from date paid.

While there has been testimony about previous and subsequent years to 1943, such evidence is only explanatory of the situation, and these years are not involved here.

The question for determination is: Was there a bona fide partnership existing between the plaintiff, L. W. Scott, and his wife, Juliette B. Scott, during the year, 1943?

This cause is submitted upon the pleadings, stipulations, evidence before the Court, documentary evidence, admissions, briefs and argument of counsel.

Findings of Fact

The Court finds the facts to be:

1. L. W. Scott, the plaintiff, is a citizen of the State of Arkansas, residing at Little Rock.

2. At the time of the payment by plaintiff of the deficiency assessed against him by the Commissioner of Internal Revenue, the named defendant was Acting Collector of Internal Revenue for the State of Arkansas.

3. On August 8, 1948, the Commissioner of Internal Revenue notified the plaintiff, L. W. Scott, of a deficiency assessed against him for the taxable year ended December 31, 1943, of $9,592.27, and an overassessment of $396.24 for the taxable year ended December 31, 1944.

4. On or about February 3, 1950, plaintiff paid to the defendant as acting Collector of Internal Revenue the deficiency assessed against him in the amount of $9,592.27; on June 26, 1950, he paid interest in the amount of $3,241.78. On or about the same date, a credit of $396.24 due the plaintiff was applied, this being the overassessment for the year, 1944.

5. On April 25, 1950, plaintiff filed a timely claim for refund. The claim was denied by the Commissioner in accordance with the provisions of Section 3772(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3772(a) (2).

6. On June 27, 1951, within apt time, plaintiff filed this action to recover the amount paid with interest thereon from date paid.

7. At the beginning of the year, 1942, the Scott Paper Box Company was a corporation, the Alton Paper Box Company, of

Alton, Illinois, being the majority stockholder, holding 351 of the 700 shares of stock outstanding.

8. The Scott Paper Box Company, a corporation, was indebted to the Alton Paper Box Company in the amount of $80,000.

9. The taxpayer here, being President and General Manager of the Scott Company, bought out the interest of the Alton Paper Box Company. In doing so, he took the stock in the name of the Scott corporation, showing a purchase by the corporation of the 351 shares at a price of $35,000. This resulted in the outstanding stock of the Scott corporation being reduced to 349 shares, of which plaintiff held 348, and his wife, Juliette Ball Scott, had one share standing in her name.

10. On August 4, 1942, stock certificates were executed for this stock, showing 174 shares being issued to Juliette B. Scott, wife of the plaintiff. But from all the evidence in the case, and the appearance of the stock certificate, the Court finds that the stock certificate remained in possession of the plaintiff, L. W. Scott, at all times.

11. On September 21, 1942, a special meeting of the Board of Directors of the Scott corporation was held. The Board of Directors consisted of the plaintiff, L. W. Scott, L. F. Scott, his brother, and plaintiff's counsel.

12. At that meeting of the Board of Directors, bonuses on salaries were voted, as follows:

| | |
|---|---|
| L. W. Scott, the plaintiff, | $10,000.00 |
| L. F. Scott, his brother, | 6,000.00 |
| L. B. Scott, his sister-in-law | 4,000.00 |

These bonuses were voted and paid, despite the condition of the corporation, which the plaintiff testified was in financial distress.

13. At this meeting on September 21, 1942, a resolution was adopted to dissolve the corporation of Scott Paper Box Company, which recited that L. W. Scott and his wife, Juliette Ball Scott, are the present owners and holders of all of the issued and outstanding capital stock, and that they proposed and agreed to assume and pay all of the above mentioned indebtedness and all other indebtedness of the Company and to surrender for cancellation all of their stock to the Company in consideration for the conveyance and transfer to them of all of the property and assets of the Company exclusive of the moneys necessary to pay the salary bonuses heretofore awarded, their intention being to thereafter continue the operation of the business of Scott Paper Box Company, as partners.

14. Juliette Ball Scott was not present at this meeting, and so far as the record or evidence shows, had slight, if any, knowledge of the action taken, and did not personally knowingly evidence her acceptance of the benefits or responsibilities cast upon her by this resolution.

15. From this date, September 21, 1942, until the date of the divorce of L. W. Scott and Juliette Ball Scott, his wife, and the property settlement between them, the business was operated in name as a partnership, but was actually operated as a sole-ownership, with the taxpayer making the decisions and earning the income.

16. There is no evidence in this record that Juliette Ball Scott ever had any information of what the earnings of the business were, what business the company was doing, or its financial condition.

17. Juliette Ball Scott, did not at any time, really, truly and knowingly intend to join together with the plaintiff, L. W. Scott, as a partner and to assume the responsibilities and perform any duties as such partner, and she performed no such duties.

18. She had no independent estate of her own; she contributed no independent funds or assets to the partnership, at or after the dissolution of the corporation, and her interest, if she ever had any, was a gift from her husband, L. W. Scott.

19. The plaintiff, L. W. Scott, did not at any time really and truly, in good faith and acting with a business purpose, aside from reducing income taxes, intend that Juliette Ball Scott should join with him as a real business partner in the Scott Paper Box Company.

20. From the dissolution of the corporation to the time of the property settlement in the divorce proceedings, Juliette

Ball Scott received no benefits from the earnings of the alleged partnership. All the moneys she received, however it appears on the books of the company, were paid to her by her husband, L. W. Scott, under his obligation as her husband and the father of their children, and were not paid her out of the earnings of the alleged partnership by reason of any interest she might have had in the partnership.

21. Juliette B. Scott actually knew nothing of the affairs of the business, and with her background and experience was probably incapable of understanding the affairs fully, even had she been told. There is no evidence that she was informed of the affairs of the business and had an opportunity to express her views or opinion as to the proper course to pursue. Her signature upon papers, writings and documents were placed there at the direction of her husband. It is apparent from her testimony and the evidence in the case that at the time she signed her name she did not even know the nature of the documents, and she certainly did not know their purport or import.

22. The conveyance to Juliette B. Scott, of certain real and personal property, and the payment to her of certain sums of money, were settlements of the family estate, and although the agreement recites the dissolution of the partnership, the money was paid her by the plaintiff in settlement of the property rights existing because of the marriage.

23. So far as it appears from the evidence in this case, the so-called partnership was created solely for the purpose of reducing income taxes. The plaintiff, while a witness in his own behalf, gave no other reason for its creation, or attempted creation.

While there is a body of general rules for testing the bona fides of family partnerships, in the last analysis each individual case must be determined on the facts appearing of record and in evidence.

Plaintiff has cited in his brief the case of Mundo v. Thompson, Collector, No. 1795 on the docket of this court, decided October 29, 1949, and Riggs v. Thompson, Collector, No. 1688, decided by this court April 15, 1948, and affirmed 8 Cir., in 175 F.2d 81. The facts in those cases, while differing somewhat from each other, differ very widely from the facts in this case. In the Mundo case, the wife not only contributed her time and efforts from the inception, she was actually the manager of the theater, and was familiar with many phases of the business. In the Riggs case, the taxpayer had created several trusts, with independent trustees to manage the trusts, and had divested himself entirely of all dominion and control over the corpus of the trusts. These cases can furnish no criteria for determining the question in this case.

As said in Batman v. Commissioner of Internal Revenue, 5 Cir., 189 F.2d 107, 111:

"So proceeding, we will have no trouble in seeing that here is no business organization, no true partnership with the end and aim in view of creating and sharing business benefits and burdens. Here is a purely familial arrangement entered into not upon considerations of really shared business burdens and benefits but upon those of strengthening and extending the family fortunes and insuring its continuing solidarity by reducing its tax burdens. It must, therefore, be truly said of it, here is no partnership; here is only a family scheme for tax avoidance by anticipatory assignment of income under the pretense of forming and conduct a partnership."

The case of Batman v. Commissioner of Internal Revenue, supra, so clearly and succinctly states the principle of law applicable in this case, and squares so well with the decisions of the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, as well as other pronouncements of that court and other appellate courts that the court sees no necessity of prolonging this memorandum.

## Conclusions of Law

The court concludes the law to be:

1. This court has jurisdiction of the parties and the cause of action.

2. No partnership ever existed between L. W. Scott, the husband, and Juliette Ball Scott, his then wife.

3. The action of the Commissioner was right in allocating to L. W. Scott, the income earned by the so-called partnership, and in assessing a deficiency tax thereon for the year, 1943.

4. The plaintiff is not entitled to judgment.

5. The defendant is entitled to judgment for costs of this action.