immunity or consented to be sued and that this Court has no jurisdiction to hear the case and the complaint should be dismissed.

An order dismissing the complaint for lack of jurisdiction may be prepared by counsel for the United States and presented for entry after endorsement by counsel for the plaintiff.

**LIEBER et al. v. UNITED STATES.**
No. 218–52.

United States Court of Claims
April 6, 1954.

Elias Goldstein, Shreveport, La., for plaintiffs.

Elizabeth B. Davis, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

952

WHITAKER, Judge.

Plaintiff Philip Lieber entered into certain partnership agreements with his children. The profits therefrom were reported by the alleged partners and taxes on the profits were paid accordingly. Later, the Commissioner of Internal Revenue decided that the alleged partnerships were fictitious, rather than real, and taxed plaintiffs as though they were the recipients of the entire income of one of the partnerships, and as though plaintiff, Philip Lieber, was the recipient of that portion of the income of the other one which he alleges he received as trustee for certain of his children. Taxes were paid accordingly, less credit for the amounts paid by the children, and this suit was brought to recover them.

■ The issue presented is whether the partnerships were real or fictitious.

This is the test laid down in Commissioner v. Culbertson, 337 U.S. 733, on page 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. The gist of the court's opinion in that case is thus stated

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case [(Commissioner v. Tower) 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670], but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

In that case, former cases were discussed that had been supposed to lay down hard and fast rules which determined the taxability of partnership income; but it was said that in those former cases it was not intended to lay down hard and fast rules; but that, in the last analysis, the determining factor was the *bona fide* intent of the parties, did they or not intend to enter into a real, and not a fictitious agreement to conduct a business as partners.

■ This opinion, and others, recognizes that there are varying forms of partnership agreements, but all agree that all of them must conform, for tax purposes, at least, to the elements essential to a valid partnership agreement, which is an association between persons to jointly carry on a common enterprise. Each must contribute something. One cannot be a partner in an enterprise if he contributes nothing to it and is merely the recipient of the earnings derived from the labors or the capital of others.

Two partnerships are involved here, the Philip Lieber Company and the Building Service Company.

1. The Philip Lieber Company is alleged to be a partnership composed of Philip Lieber, two of his minor children, and his adult children and their spouses. To this alleged partnership no one contributed any services other than Philip Lieber. His children had nothing whatever to do with its management or control, nor did they make any other contribution to the alleged partnership, unless it can be said that they furnished a part of the working capital. Did they do this?

Let us look, first, to the minor children. Did they furnish any capital to carry on the enterprise? Whatever they may have furnished was given to them by their father Philip Lieber. Had he given them anything which they later contributed to the common enterprise? Apparently not. What he had done in years past was to accumulate a fund which he regarded as belonging in part to them; but he had not actually given it to them; he had not put it under their dominion and control; it was still his, to do with as he pleased. This fund was

put into the partnership. It was his fund, not his children's fund.

There was more substance to the contributions of the adult children. On November 16, 1942, plaintiff conveyed to them by deed a tract of land on Texas Avenue in Shreveport, Louisiana, which Mr. Lieber regarded as the consummation of prior gifts to them, which was later turned over to the partnership. The deed from Philip Lieber to his children recited a consideration of $50,000 in cash and the assumption of a mortgage of $25,000; but no consideration actually passed. The reason a consideration was recited was that a deed without a valuable consideration was invalid under Louisiana law. While the fact that there actually was no consideration, although one was recited, may have made the conveyance invalid, still, the recitation of a consideration, and the execution and recording of the deed, is some indication of an intention on Mr. Lieber's part to divest himself of title to this property and to put title in his adult children.

This property, as stated, was conveyed to the partnership. It was worth $100,000, although the recited consideration in the deed from Philip Lieber to his children was $75,000. Whether the interests of the grantees in the property were the same does not clearly appear, because the conveyance to the partnership of the interests of two of the children, Mrs. Fox and Mrs. Shavin, and their husbands, recited a consideration of $45,000, whereas the conveyance of the interest of Philip Ben Lieber recited a consideration of only $5,000.

This is the only transaction which may be considered as a contribution to the partnership by the adult children. After Mr. Lieber had transferred to the partnership the funds which he had accumulated for his minor children, but had never given to them, it was then considered that each child, or child and spouse, had contributed $40,000 to the partnership. Mr. Lieber also contributed to the partnership $80,000 of his own funds.

As stated, the minor children contributed nothing. If we regard the contribution of the real estate by the adult children as real, and that they had an equal interest in it, then each contributed $33,333.33, and Mr. Lieber gave them the balance to make up the $40,000.

The transfer of the real estate to the partnership has at least the appearance of a genuine contribution to the partnership by the adult children. It was made about a year after the transfer of the real estate to them. However, Mr. Lieber's conduct of the partnership business and the provisions of the partnership agreement itself raise doubts as to whether he had actually relinquished control over the real estate conveyed to the adult children, and which they, in turn, transferred to the partnership.

Under the partnership agreement, plaintiff, Philip Lieber, was named the "Managing Partner." As such he had "sole and exclusive power and authority to bind and obligate the partnership in any manner whatsoever. * * *" He was given authority to borrow money, to pledge the firm's assets, and "to sell all or any part of" them. He was "especially authorized and empowered to fix and determine from time to time the salaries and drawing accounts of each partner, including himself. * * *" The agreement provided that the profits of the partnership "shall be distributed to such extent as may be determined by the Managing Partner. Such distribution need not be made in proportion to the interests of the several partners, but shall be made in such manner as the Managing Partner deems fair and equitable." No partner, except the Managing Partner, could transfer his interest "without the consent of the Managing Partner"; but a partner might withdraw from the partnership.

The Managing Partner could not be deposed except by a vote of partners holding a two-thirds interest in the partnership. The only other restriction upon his absolute control of the assets and of the income therefrom was that his distribution of the profits might be over-

954

ridden by vote of the partners holding a majority in interest of those present at the meeting. This, however, was no restriction, in fact, until the minors reached their majority, because plaintiff owned a two-sevenths interest, and plaintiff as the guardian of his minor children owned another two-sevenths, thus giving him a majority.

Under the partnership agreement, therefore, plaintiff, Philip Lieber, had the absolute power to give the income from the partnership to whomsoever he wished and in such amount as he wished. It was his to do with as he pleased. In fact, though not in form, he had the same control over the assets and the profits derived therefrom after the partnership was formed as he had before. This, however, is subject to the limitation that, presumably, upon liquidation the assets were to be distributed in proportion to the partners' interest in the enterprise. But, so long as the partnership lasted, and the minors had not reached their majority, plaintiff, Philip Lieber, could do with the assets and profits whatever he wished.

Even after the minors came of age his actual power of control was but little diminished, because partners receiving more than their share could be expected to uphold the distribution of profits he had decided upon, and he only needed the votes of two children out of five to be upheld.

He actually handled the partnership business as if it were his own. No one of his children took any part in its management, nor did any work for it. The amount of the profits he determined each child was entitled to was not in proportion to the interests of the partners. He determined that more should go to some than to others. The only reason he assigns for this is that some of his children were entitled to income from another family partnership, whereas others were not, and he wanted to somewhat equalize the aggregate income to which each was entitled.

As a matter of fact, no part of the profits of the Philip Lieber Company were ever distributed during any of the years in question, nor was any account set up for the different partners. However, income tax returns were filed by the partnership, which, under the heading "Partners' shares of Income Credits" showed the following for each of the years in question:

|  | 1945 | 1946 | 1947 | 1948 |
|---|---|---|---|---|
| Philip Lieber | $149.36 | $35.12 | $5,008.88 | $20,974.35 |
| Elizabeth L. Fox | 100.00 | 1,000.00 | | |
| Harry Fox | 100.00 | | | |
| Rosabel L. Shavin | 100.00 | | | |
| Joseph S. Shavin | 100.00 | 1,000.00 | | |
| Philip Ben Lieber [1] | 100.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Harriet Caroline Lieber [2] | 2,700.00 | 5,432.59 | 5,000.00 | 10,000.00 |
| Samuel L. Lieber | 2,700.00 | 4,216.29 | 4,000.00 | 6,000.00 |
|  | 6,049.36 | 12,684.00 | 15,008.88 | 37,974.35 |

[1] In 1946, 1947, and 1948 under names of Philip Ben and Sherrie L.
[2] In 1946, 1947, and 1948, under names of Harriet and Lynn Pomeroy.

Mr. Lieber's distributive share for one year was $149.36, for another $35.12, for the next about $5,000, and the next nearly $21,000.

His minor children fared next best, the distributive share of one being reported at an aggregate of about $23,000, and the other, at about $17,000. Two of the adult children were reported as entitled to $1,100, and a third child to $100. In one of the years, two of the adults were reported as entitled to noth-

ing, but one, as entitled to $1,000; and in two of the years none of the adults were reported as entitled to anything.

As further indicating Mr. Lieber's control over the partnership assets and income, he decided in 1947 that two of his adult children and their spouses should withdraw from the partnership, and this was done, but no distribution of income or assets was made to them either in that year or the following year, although Mr. Lieber claims he did set aside for them some government bonds, but the amount of the bonds was not shown.

No distribution of the partnership assets was ever made until after this tax dispute arose. In 1952, five years after the last taxable year in question, the partnership was liquidated and each child received assets in proportion to his interest in the partnership.

While this distribution on liquidation lends support to the claim that the children had a real and not a fictitious interest in the partnership, we are not convinced that they were actually partners during the years in issue. The record, as a whole, shows that Mr. Lieber intended to retain complete control of the partnership assets and income, and to postpone actual distribution of the income until liquidation, and then in such amounts to each child as to him seemed best.

This retention of control over the assets of the partnership and over the enjoyment of its income justified the Commissioner of Internal Revenue in treating the partnership income as plaintiffs' income. (Philip Lieber and his wife owned the partnership property as community property.) As a practical matter, Mr. Lieber retained the same control over the handling and the disposition of the assets and the income therefrom after the formation of the partnership as he had had before.

This, it seems to us, is inconsistent with the idea of a partnership in which people join together for the promotion of a common enterprise, each contributing his share, either of capital or services, or both, and each enjoying his share of the profits and bearing his share of the losses.

In Commissioner v. Culbertson, supra, the Court said 337 U.S. at pages 745–746, 69 S.Ct. at page 1216:

"* * * In the Tower and Lusthaus cases, Lusthaus v. Com'r, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679 this Court, applying the principles of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, supra; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, supra; and Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, found that the purported gift, whether or not technically complete, had made no substantial change in the economic relation of members of the family to the income. In each case the husband continued to manage and control the business as before, and income from the property given to the wife and invested by her in the partnership continued to be used in the business or expended for family purposes. We characterized the results of the transactions entered into between husband and wife as 'a mere paper reallocation of income among the family members,' noting that 'The actualities of their relation to the income did not change.' [327 U.S. at page 292, 66 S.Ct. 532.] This, we thought, provided ample grounds for the finding that no true partnership was intended; that the husband was still the true earner of the income."

The court also said 337 U.S. at page 746, 69 S.Ct. at page 1216:

"* * * It is frequently stated that transactions between members of a family will be carefully scrutinized. But more particularly, the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least

his dominion and control over the subject of the gift or the purposes for which the income from the property is used. He is able, in other words, to retain 'the substance of full enjoyment of all the rights which previously he had in the property.' Helvering v. Clifford, supra, 309 U.S. at page 336, 60 S.Ct. [554] at page 557, 84 L.Ed. 788.

We do not think Mr. Lieber's "dominion and control over the subject of the gift or the purposes for which the income from the property [was] used," was disturbed. He retained " 'the substance of full enjoyment of all the rights which previously he had in the property' ", at least until liquidation of the partnership, which was after the tax years in question.

■ There can be no doubt of this in the case of the minor children, and but little doubt in the case of the adult children. It is true the adults transferred to the partnership the property on Texas Avenue, but when we offset against this the fact of plaintiff's control over this property, as well as other partnership assets, and the income from it, and, further, that he required two of the donees of this property to retire from the partnership without any distribution to them of the partnership assets until five years later—when we offset these things, we must conclude that the adults, as well as the minors, were not partners in fact.

2. *The Building Service Company.* The situation with reference to this partnership is entirely different. Indeed, it points up the unreality of the partnership known as the Philip Lieber Company, discussed above.

Plaintiff, Philip Lieber, prior to 1935 had been one of the owners of the Building Service Company, Inc. A Mr. Segall was the other owner. In 1935 Mr. Lieber purchased Mr. Segall's interest, and then suggested to his son-in-law, Harry Fox, that he take over the management of this business. The proposal was accepted, and Harry Fox continued to manage the business from that time until after the close of the last taxable year in question. In 1936 Philip Ben Lieber, plaintiff's son, became a partner and thereafter devoted his entire time to the conduct of the business. Mrs. Rosabel Shavin, plaintiff's daughter, served as the bookkeeper of the business from 1935 to 1946. Plaintiff's other adult children purchased interests in this enterprise, presumably through gifts or loans from Mr. Lieber.

Plaintiff, Philip Lieber, divested himself of all interest in this partnership, because he thought that he might be criticized for engaging in the sale of building materials and supplies, since he was secretary of a savings and loan association. He took no part in the management of this business nor in the keeping of its books and records. The partnership return for 1945 listed the following as partners: Harry and Elizabeth Fox, Harriet C. Lieber, a minor, Philip Ben Lieber, and Joseph S. and Rosabel Shavin.

A short time prior to January 1, 1946, the Shavins and Harry Fox fell out over the operation of the business, and Fox demanded that the Shavins dispose of their interest and withdraw from the partnership. They did so, ostensibly. A new partnership was then formed between Harry Fox, Philip Ben Lieber, and Philip Lieber, trustee. Philip Lieber was trustee for his two minor children and, surreptitiously, for Mr. and Mrs. Shavin,—Harry Fox was not aware that Mr. Lieber was trustee for the Shavins, as well as for his minor children.

■ The partnership agreement provided that Harry Fox and Philip Ben Lieber would devote their full time and attention to the business, and would have full authority to transact all the regular business of the partnership. The profits were to be divided equally among the partners, Harry Fox, Philip Ben Lieber, and Philip Lieber, trustee,

and the agreement provided that each should contribute an equal amount of the capital. This was in fact done. The share of the profits received by Philip Lieber, trustee, was by him distributed, one-third to the Shavins, and one-third each was credited by him to the account of each of his minor children.

Although the capital contributed by the children to the partnership consisted of gifts or loans made by Mr. Lieber, the Building Service Company was a partnership in fact. Plaintiff exercised no control nor dominion over the partnership, either in his individual capacity or as trustee; the entire management and control of the business was in some of his adult children or their spouses; and the profits from the business were divided among his children in proportion to their respective shares.

Under such circumstances we think this was a partnership in fact and that the Commissioner of Internal Revenue was not justified in taxing any part of the income to plaintiff, Philip Lieber.

It is true the minor children contributed no services and their capital investment was a gift to them by their father, but, in the case of this partnership, the gift seems to have been a *bona fide* one, fully consummated, with no strings attached.

Indeed, defendant's argument that the income from this partnership should have been included in plaintiff's gross income seems to us half-hearted.

Judgment both on the original and amended petitions and on the counterclaim will be withheld until the incoming of a stipulation by the parties, or, in the absence thereof, until the incoming of a report from a commissioner showing the amount due, computed in accordance with this opinion.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

**RELTOOL SERVICE CO.**

v.

**UNITED STATES.**

No. 49474.

United States Court of Claims.
April 6, 1954.

Raymond C. Cushwa, Washington, D. C., for plaintiff. George D. Webster and Davies, Richberg, Tydings, Beebe & Landa, Washington, D. C., were on the briefs.