MARY FRANCES LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. B. LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45576, 45577. Filed December 28, 1954.

*Edward L. Potter, Esq.*, for the petitioners.
*M. Clifton Maxwell, Esq.*, for the respondent.

---

540

544

OPINION.

BLACK, *Judge:* Two major issues are raised by the pleadings in this case. The first is whether the A. B. Lewis Co. was operated by A. B. as a sole proprietorship during the period in issue or whether it was a partnership composed of A. B., his wife, Mary, and his two minor children, Gail and Joel Jack. In their original petitions, petitioners alleged that the Commissioner erred in his determination that their two minor children were not partners in the business, thus questioning the Commissioner's determination only in that respect. Later they were permitted to amend their petitions so as to allege in the alternative that if our Court should find and hold that the two minor children were not partners in the business, then there was no partnership at all and A. B. Lewis Co. was operated as a sole proprietorship by A. B. and each petitioner's community share of the income from that business must be computed on a calendar year basis rather than a fiscal year basis.

The second issue concerns the propriety of the alleged partnership's reduction in the value of its used car closing inventory at the end of its 1947 fiscal year. It will be seen, however, that because of our decision on the first issue explained hereafter discussion of the inventory question is unnecessary.

The family partnership problem may be described as follows: Petitioners A. B. and Mary filed separate returns reporting their commu-

nity income for 1947 on the calendar year basis. The total community adjusted gross income reported (one-half each) by petitioners included net business income of $36,492.04 from the alleged partnership for its final fiscal year [2] ending July 1, 1947.[3] Petitioners' two minor children reported the balance of the alleged partnership's income for that fiscal year. Respondent contends that a partnership existed for tax purposes between petitioners only and that, since the children were not recognizable partners for tax purposes, the entire partnership net income for its 1947 fiscal year is taxable to petitioners.

Petitioners, on the other hand, argue first that the A. B. Lewis Co. was operated during the period in issue as a three-member partnership composed of the two children and the marital community of A. B. and Mary (rather than A. B. and Mary, individually). However, continue petitioners, if the children are not recognized as partners then, since petitioners were not partners as between themselves, the business was not a partnership at all but a sole proprietorship conducted by A. B., and Mary's interest in the income from the business arose solely as a result of the Texas community property laws. As a sole proprietorship, maintain petitioners, the business income must be reported on a calendar (rather than fiscal) year basis, which means that only the business income during the period January 1–July 1, 1947, is reportable in their individual returns for 1947. And, conclude petitioners, if only the January 1–July 1, 1947, business income is reportable in their individual returns they overpaid their taxes for 1947.

We first note that petitioners maintained no books recording their individual income. The books which were maintained were of the alleged partnership. Consequently, we think that under such a state of facts petitioners are correct in their contention that, should it be found that no partnership existed, then only the income of the business for the period January 1–July 1, 1947, is reportable by them

---

[2] Internal Revenue Code of 1939.

SEC. 187. PARTNERSHIP RETURNS.

Every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual. The return shall be sworn to by any one of the partners.

SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.

[3] On July 2, 1947, the business was incorporated.

for 1947. Sec. 41, I. R. C. of 1939;[4] Regs. 111, sec. 29.41–4;[5] see *Russell Giffen*, 14 T. C. 1272, 1282, affd. 190 F. 2d 188, certiorari denied 342 U. S. 918. In the *Giffen* case, we said:

It is true that if we had held that Russell Giffen & Co. was not to be recognized by us for tax purposes, then the provisions of section 188 would have no application and the income reported on a partnership basis would have to be adjusted to the calendar year basis used by each of the petitioners. But respondent did not challenge the validity of the partnership of Russell Giffen & Co. for tax purposes. He recognized it to the extent of petitioners, but gave no recognition to the partnership status of the four children therein. Necessarily, our determination in this case was limited to whether the young Giffens were bona fide members of the partnership. It follows that the partnership was still in existence taxwise. Therefore, the provisions of section 188 apply and we uphold respondent's computation of petitioners' income from the farming business based on the fiscal year which was elected by Russell Giffen & Co. in keeping its books and filing its returns.

It is true that in the instant case respondent, as in the *Giffen* case, *supra*, has not challenged the validity of the partnership insofar as to whether it existed between husband and wife. But, in the instant case, unlike the *Giffen* case, petitioners by appropriate amendments to their petitions have alleged in the alternative that if we should hold that the minor children are not members of the partnership then no partnership existed at all and the A. B. Lewis Co. was being operated as a sole proprietorship and petitioners' tax liability should be treated accordingly. For reasons which we shall state more at length later in this Opinion, we hold that Gail and Joel Jack were not members of the alleged partnership and in fact there was no partnership at all but that the business was being operated as a sole proprietorship. This being our holding, it follows, as we said in the *Giffen* case, *supra*, that "then the provisions of section 188 would have no application and

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

[5] SEC. 29.41–4. ACCOUNTING PERIOD.—The return of a taxpayer is made and his income computed for his taxable year, which in general means his fiscal year, or the calendar year if he has not established a fiscal year. (See section 48.) The term "fiscal year" means an accounting period of 12 months ending on the last day of any month other than December. No fiscal year will, however, be recognized unless before its close it was definitely established as an accounting period by the taxpayer and the books of such taxpayer were kept in accordance therewith. A person having no such fiscal year must make his return on the basis of the calendar year. Except in the case of a first return for income tax a taxpayer shall make his return on the basis upon which he made his return for the taxable year immediately preceding, unless, with the approval of the Commissioner, he has changed his accounting period. See section 29.46–1.

the income reported on a partnership basis would have to be adjusted to the calendar year basis used by each of the petitioners."

Inasmuch as respondent and petitioners stipulated at the hearing that the business net income of A. B. Lewis Co. for January 1–July 1, 1947, was $26,500, a holding by us that no partnership existed renders it unnecessary to consider the question raised by the second issue regarding the propriety of the aforementioned reduction in the alleged partnership closing inventory. We do not understand there is any disagreement between the parties as to this. If only the stipulated $26,500 in business income is to be included in petitioners' taxable income for 1947, rather than the $36,492.04 actually reported by them (and on which they paid taxes), is is obvious that they overpaid their taxes for that year. Since it is clear from our findings that each petitioner paid $4,177.68 in taxes for 1947 within the 3-year statutory period of limitations prescribed in section 322 (d) (1) (B) of the 1939 Code,[6] they are, to that extent, entitled to credits or refunds of any overpayments determined by us under Rule 50.

The results described above all turn upon our holding that the A. B. Lewis Co. was conducted not as a partnership between A. B. and either Mary or the children but, rather, was conducted by A. B. as a sole proprietorship. We have so held for the reasons which follow.

It is clear from the decided cases that the existence of a partnership for Federal tax purposes depends on the intent of the parties, which is a question of fact. This intent test was stated in *Commissioner* v. *Culbertson*, 337 U. S. 733, as follows:

The question is * * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

---

[6] SEC. 322. REFUNDS AND CREDITS.

(d) OVERPAYMENT FOUND BY BOARD.—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, * * * the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision (1) that such portion was paid (A) within two years before the filing of the claim, the mailing of the notice of deficiency, or the execution of an agreement by both the Commissioner and the taxpayer pursuant to section 276 (b) to extend beyond the time prescribed in section 275 the time within which the Commissioner might assess the tax, whichever is earliest, or (B) within three years before the filing of the claim, the mailing of the notice of deficiency, or the execution of the agreement, whichever is earliest, if the claim was filed, the notice of deficiency mailed, or the agreement executed within three years from the time the return was filed by the taxpayer, * * *

As regards Gail and Joel Jack, the minor children, the establishment of the alleged partnership was a unilateral matter in which the children were passive parties; they were simply told by A. B. that they were being made partners. *Batman* v. *Commissioner*, (C. A. 5) 189 F. 2d 107, affirming a Memorandum Opinion of this Court, certiorari denied 342 U. S. 877. Moreover, the very manner in which the alleged partnership was established raises substantial doubts as to its bona fides, it appearing from the failure to set up capital accounts for the children until after the receipt of the September 12, 1943, letter from A. B.'s accountant (quoted in our findings), although the partnership was purportedly formed on January 1, 1943, that the final decision to conduct the business as a partnership was not made until after the tax effects for 1943 were determined. Further, the absence of a partnership agreement plus the fact that, as noted below, the conduct of the parties does not clearly evidence an understanding that the business be conducted as partners is another factor of importance. See *L. C. Olinger*, 10. T. C. 423; compare *Weizer* v. *Commissioner*, (C. A. 6) 165 F. 2d 772.

The children were 12 and 9 years old when they were purportedly made partners; no trustee or legal guardian was appointed to look after their interests nor were their disabilities as minors removed; they took no part in the management or supervision of the business, A. B. remaining in complete control thereof; they performed no regular duties in the business; they had no authority to sign business checks; they exercised no control over the income attributable to their alleged capital interests and, in fact, none of that income was distributed to them or used for their benefit but was, instead, reinvested in the business; they did not even know that tax returns were being filed for them and taxes paid on the income attributable to their capital interests. A. B., in addition, had complete control over the distribution of profits. His unilateral action in drawing a salary (during the alleged partnership's 1947 fiscal year) prior to the distribution of profits to the partners' accounts without obtaining the other partners' consent is evidence of that. *Lieber* v. *United States*, 128 Ct. Cl. 128, 119 F. Supp. 951. Moreover, A. B. continued to represent the business as a sole proprietorship to creditors and to an official body of the State, *Maxwell* v. *Commissioner*, (C. A. 4) 208 F. 2d 542, certiorari denied 347 U. S. 1013, apparently did not notify his employees that the children had been made partners, and never registered the partnership under the Texas Assumed Name Statute.

We think it clear from the above that, upon consideration of all the facts, the parties did not "in good faith and acting with a business purpose," *Commissioner* v. *Culbertson, supra*, intend that the busi-

ness of A. B. Lewis Co. be conducted as a partnership in which petitioners' minor children were included as partners. As was said by the Court of Appeals in *Batman* v. *Commissioner, supra,* "here is only a family scheme for tax avoidance by anticipatory assignment of income under the pretense of forming and conducting a partnership."

Considering next the question raised by petitioners in the alternative as to whether Mary was a partner with A. B. in the conduct of the business, we are compelled to reach the same conclusion. Although Mary at various times prior to 1943 (the year in which the alleged partnership was formed) sold real estate and advertising in order to obtain capital for A. B.'s business, and also performed certain duties in the business itself, there is no contention that Mary was then a partner. Rather, it is conceded by all parties that prior to 1943 the business was a sole proprietorship conducted by A. B. And, in 1943 itself, we think the only action attempted was to make the children partners; we see no evidence of any effort or intent to change Mary's status in relation to the business.

The deed of gift dated January 2, 1943, itself indicates this. It purports to make gifts of interests in the business only to the children, was joined in by Mary, and states in part that "As a result of this deed of gift, my wife and I will own and retain one-half (½) of the business." We think this language reveals that Mary was intended to have no different interest in the business than theretofore, which in fact means that she had no partnership interest (it being conceded, as aforementioned, that prior to 1943 the business was a sole proprietorship). The fact that Mary was mentioned in the deed at all, and that she joined in its execution, resulted, we think, only from the belief that Mary had some sort of an interest in the business as a consequence of the community property laws of Texas.

When tested by the general rules governing partnerships under the Federal statutes as interpreted by the courts, particularly the Supreme Court in the *Culbertson* case, *supra,* we think the facts clearly show that Mary was not a partner in the business nor was it intended that she should be. Close analysis of the testimony, considered in the light of all the surrounding circumstances, convinces us that both petitioners regarded Mary's interest in the business as springing from her community property rights under the Texas statutes, rather than as the result of any agreement, either oral or written, that she should be a partner in the business of A. B. Lewis Co. Merely because a wife under Texas community property laws owns a one-half interest in her husband's profits in a business which he is conducting as a sole proprietorship does not make her a partner in the business. We think it is unnecessary to cite any authority on that point.

For the foregoing reasons, therefore, we hold (a) that A. B. Lewis Co. was during the period in issue operated by A. B. as a sole proprietorship, (b) that the business income therefrom must be reported by petitioners on a calendar year basis and, as a consequence thereof, (c) that petitioners overpaid their income taxes for 1947 and are entitled to credits or refunds of such taxes in amounts to be determined under Rule 50.

*Decisions will be entered under Rule 50.*