OPINION. Rice, Judge: The parties concede that the North Pole Distributing Company and the North Pole Ice Company were partnerships during the years 1947, 1948, and 1949, and that petitioner was a partner in these two enterpi’ises during such years. We must decide the extent of her partnership interests therein. We must decide whether, for tax purposes, petitioner is to be regarded as possessing a one-half interest in the North Pole Distributing Company and a one-seventh interest in the North Pole Ice Company during the years 1947, 1948, and 1949, or, whether her children acquired two-thirds of the aforementioned partnership interests upon the death of their father, intestate, in 1941 and continued to own two-thirds of such partnership interests during the years here in issue. Petitioner contends that her deceased husband, John Russo, possessed a one-half interest and a one-seventh interest, respectively, in these two partnerships at the time of his death in 1941, and that one-third of these partnership interests were inherited by her and the remaining two-thirds were inherited by her children under the laws of intestate succession of the State of West Virginia. She argues that her children are to be regarded as silent partners in these two enterprises during the years here in issue, and that she erred in reporting both her own and her children’s distributive shares of partnership income on her individual returns for such years. Respondent has determined that petitioner’s children possessed no partnership interests in these two enterprises during the years in issue. He concedes that Russo was a one seventh partner in the North Pole Ice Company but denies that Eusso possessed any partnership interest in the North Pole Distributing Company. The evidence presented with respect to the ownership of this latter enterprise prior to Eusso’s death is inconclusive and contradictory. We have been unable to make any finding of fact as to whether it was then operated as a sole proprietorship by petitioner’s brother, Lombardo, or whether Eusso was, in fact, a silent partner with Lombardo, each sharing equally in the risks and profits of the business. However, we may pass this factual hurdle, for, even assuming that Eusso was an equal partner in this business, we think that respondent has correctly determined that Eusso’s five children did not become partners therein, or in the North Pole Ice Company, upon his death. The devolution of property upon death is determined by State law. See Lyeth v. Hoey, 305 U. S. 188 (1938). It appears that under West Virginia law Eusso’s children were entitled to a share of any partnership interests possessed by him at the time of his death. However, this does not automatically render the children partners in the businesses, particularly for Federal tax purposes. It is a general rule that a partnership is terminated by the death of a partner. It is then the duty of the surviving partner to wind up the business and distribute the decedent’s share of partnership assets to those entitled to receive them. Hooper v. Hooper, 32 W. Va. 526, 9 S. E. 937 (1889). However, in lieu of accepting a distribution of a decedent’s share of the partnership assets, the widow and heirs of the deceased partner may agree with the surviving partner to continue the business. They may agree to leave the decedent’s share of the partnership assets in the business and to substitute themselves as partners with respect to his partnership interest, thus fractionalizing his partnership interest among themselves. Hoyt v. Sprague, 103 U. S. 613 (1880). It is the essence of the agreement entered into by petitioner and Lombardo after the death of Eusso which isf the nub of the question here. Even though no formal, written partnership agreement was entered into by petitioner and her brother, Lombardo, after Eusso’s death, it is clear that they had an oral understanding as to how the profits and risks of the business were to be divided. It is also clear that at no time during the period extending from the death of Eusso through the taxable years here in issue were petitioner’s children considered as partners in either enterprise. They were not considered as such by either petitioner or Lombardo, or by her partners in the North Pole Ice Company. The fundamental criterion in determining the existence of a valid partnership is the existence of an intent to join together in the conduct of the business. Commissioner v. Culbertson, 337 U. S. 733 (1949); Commissioner v. Tower, 327 U. S. 280 (1946); Lusthaus v. Commissioner, 327 U. S. 293 (1946); Mary Frances Lewis, 23 T. C. 538 (1954); L. C. Olinger, 10 T. C. 423 (1948). Each of the partners must signify such intent to the others and enter into an agreement, either oral or written, that they will each share in the profits and losses of the enterprise. It is true that petitioner, as guardian of her five minor children at the time of Russo’s death, could have made such agreements on their behalf. But there is no evidence to that effect in the record. To the contrary, it is obvious that petitioner and her partners in the two enterprises did not consider the children as possessing any partnership interests therein. It was not until 1950 that petitioner’s tax counsel advanced the theory that petitioner’s children were partners in the two partnerships. Certainly, it is logical to assume that the children themselves would have been surprised had anyone suggested to them sometime prior to 1950 that they might be liable for debts and obligations incurred by the partnerships. We recognize that petitioner may have contributed the children’s shares of partnership assets to the new partnerships which were formed upon the death of her husband for the purpose of continuing the businesses. We do not attempt to decide here what the children’s rights are with respect to such assets. But even though such assets were to be viewed as a contribution of capital on behalf of the children, under the circumstances of the present case the children cannot be considered as partners in the businesses. In Commissioner v. Culbertson, supra, the Supreme Court made the following statement in order to dispose of the misconception that it had laid down a yardstick, in the Tower case, supra, for measuring the reality of a family partnership in terms of capital contributions or the rendition of services: The Tower ease thus provides no support for such an approach. We there said that the question whether the family partnership is real for income-tax purposes depends upon whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their “agreement, considered' as a whole, and by their conduct in execution of its provisions.” Drennen v. London Assurance Co., 113 U. S. 51, 56; * * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the.Tower case, but whether, considering all the facts — the agreement, the conduct of the parties in execution of its provisions, their statements, , the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent — rthe parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * * Capital contribution is only one of the factors to be considered in determining the existence or nonexistence of a valid partnership. Since neither the petitioner nor any of her partners intended to join in the conduct of a business with petitioner’s children as partners during the years in issue, no part of the income of either of the two partnerships is taxable to said children for such years. The income of the two partnerships in question is taxable to the individuals who were operating the businesses, who considered themselves as the sole partners, and who held themselves out as the sole partners. Cf. Frances Marcus, 22 T. C. 824 (1954). Decision will i>e entered for the respondent.