**716**

There is no question but that this provision is applicable to Chapter XI proceedings. It is stated in Collier on Bankruptcy, 14th Edition, Volume 8, Section 371, at Page 1272, that "Whereas an ordinary composition of a principal's debt outside of bankruptcy, resting as it does in contract, is generally held to release the surety, the release of a principal's debt which results from confirmation of an arrangement *does not discharge the surety*. That result with respect to co-debtors with or sureties for the debtor is expressly provided for in Section 16 of the Act, which is applicable to Chapter XI proceedings. The word co-debtor is there used, of course, in the sense of a co-debtor of the obligation, not in the sense of a co-debtor in the Chapter XI proceeding." (Emphasis added.)

In view of the foregoing, I need not consider the other arguments advanced by the defendants.

Accordingly, judgment is rendered in favor of the plaintiff against the defendants in the sum of $1,431.02 with interest.

Otis Harold **WILLIAMSON** et al.

v.

The **UNITED STATES**.

No. 161–54.

United States Court of Claims.

July 12, 1957.

Mr. Nathan Patz, Baltimore, Md., for plaintiffs.

Mr. Jerome Fink, Washington, D. C., with whom was Mr. Asst. Atty. Gen. Charles K. Rice, for defendant. Mr. James P. Garland and Mr. Theodore D. Peyser, Jr., Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

█ The plaintiffs, husband and wife, bring this suit to recover income taxes which they were required to pay and which, they say, should not have been collected from them because the income to which the taxes were attributable was not their income, but that of their three children. It is a family partnership income tax case, and concerns the tax years 1943 through 1949.

The plaintiff, Otis Harold Williamson, has been successfully engaged in the veneer manufacturing business for most of his adult life. From 1921 to 1929, he and his brother, Marion, conducted such a business in corporate form. From 1930 through 1936 he operated through another corporation. Between 1936 and June 30, 1941, he operated as an individual, and leased, for use in his business, a warehouse from his wife, the plaintiff Virginia, who was a woman of independent means.

On July 1, 1941, a partnership agreement was executed between Harold and Virginia, to conduct a veneer manufacturing business under the name of "Veneers", the name which Harold had used when he operated as an individual. The wife contributed the warehouse, having a stated value of $57,000 and the husband contributed the assets of his going business, having a stated value of $167,414.64. The agreement provided for a salary of $12,000 a year for Harold, $4,000 a year for Virginia, a 5 percent return to each on their capital accounts and equal division of the profits above those fixed charges. This partnership operated the business in accordance with the agreement.

On December 31, 1942, the plaintiffs executed a declaration of gift which stated that they were transferring to their three children certain named amounts of their capital accounts in the partnership. Harold gave $5,000 to each of the children. Virginia gave $7,100 to Margaret, and $3,000 each to Nancy and John. The recited reason for the larger gift to Margaret was that Virginia had already, during the year, made gifts of $4,100 each, of other property to Nancy and John.

Also, on December 31, 1942, the plaintiffs and their three children executed an "Agreement of Partnership". This document adopted by reference the partnership agreement of the parents of July 1, 1941, and made amendments to it to make it applicable to the children. The provision that each partner was to devote substantially all his time to the partnership business was made inapplicable to the children. The agreement designated the parents as the "managing partners" and provided that only the parents would be authorized to draw checks on the partnership bank account. At the time of the execution of the December 31, 1942 agreement, Margaret was 20 years old, Nancy 18, and John 15. All were in school.

In connection with the declaration of gift, executed on the same date as the partnership agreement, it is relevant that, back in the 1927–1929 period, when Harold was operating the business in corporate form with his brother, there had been entered on the books of the corporation items transferring credits owing by the corporation to Harold to the three children all of whom were, in 1927, less than six years old. Interest was credited on the corporation's books up to September 1, 1929, and on that date the books showed that the corporation owed each of them $16,402.96. In September 1929, the corporation sold its assets to an outside party for some $160,000. The corporation ceased to be active, but Harold used the money which he received for his one-half interest in it to continue in the veneer manufacturing business. The credits to the children on the books of the corporation disappeared for some years, and, no doubt, Harold got the money represented by those credits. In 1942, the children then being quite mature, there was family discussion of these old obligations. It was agreed that interest on the amounts of some $16,000 credited to each of the children in 1929 would be some $28,000 in all, and that the children should be

given interests in their parents' partnership in that amount. In the December 31, 1942, declaration of gift, Margaret was given $12,100 and Nancy and John $8,000 each. In the September discussion it was agreed that Harold, the father, would, during the year 1943, pay the children the principal amounts owing to them in 1929, a total of $49,208.58. He paid them these amounts mostly in 1943 and the rest in 1944. Those payments were invested by or for the children in enterprises other than the veneer business.

A question of importance, though not, we think, decisive, is whether the sums, totaling some $28,000, which were credited to the children as shares in the five-member partnership, were gifts made to them at that time, or were payments to them of interest on preexisting debts. The "declaration of gift" stated that, under the gift tax law as it was on the date of the declaration, but would not be on the following day, the gifts of the amounts involved in the declaration, plus the other amounts given during the year, would be tax-free. That being so, the donors may well have been advised that, in view of the rather vague past history of the debt to the children, it would make the transaction more clean-cut, and cost nothing, to put it in the form of a gift. They could not possibly have thought that their situation in an income tax case such as the instant one would be improved by calling the transaction a gift, rather than the payment of a debt, since it has been frequently urged by the Government that gifts by parents to children of shares in a partnership do not relieve the parents from paying the taxes on all of the partnership income.

We do not, however, think the transaction was a gift. The entries in the corporation's books in 1927–1929 said, in substance, "Pay these sums which are due to me, Harold, to my three children." The debtor, the corporation, assented to the novation. The transaction being a pure benefit to the children, their assent was presumed and the transaction was complete. When one-half of the sale price of the corporation's assets came, in 1929, into the hands of Harold, and he, as a half-owner of the corporation, did not see to it that the debt to the children was paid, he became responsible to them for it, and for interest upon it until it was paid. He used the money to develop his veneer manufacturing business and it was not only just but also legally obligatory that the children be paid as they were paid in 1942 and 1943. We think the five-member partnership, formed on December 31, 1942, started with contributions of capital which was owned by the several partners before that date.

The partnership agreement provided for salaries of $12,000 and $4,000, respectively, to Harold and Virginia; for a 5 percent return on the capital standing to the account of each partner; for an apportionment of the profits according to the capital shares of the partners, except that the proportion attributable to the shares of Harold and Virginia should be divided equally between them. As we have said Harold and Virginia were designated as the managing partners and checks on the partnership account were to be signed only by them. The agreement contained conventional detailed provisions about dissolution, etc.

Upon the formation of the five-member partnership, notices of the formation of the firm and the identity of the partners were given to the bank, several insurance companies, and Dun and Bradstreet. A federal gift tax return was filed. A certified public accountant set up an accounting system showing the capital interests, additions to capital, withdrawals and other usual information. No withdrawals by or on behalf of the children were used to pay expenses which should have been paid by the parents during the minority of the children, or to pay the debts or expenses of the parents. A deed to an additional piece of land was taken in the name of the five partners "trading as Veneers", and was recorded on March 19, 1949.

After the formation of the partnership on December 31, 1942, the children

continued to go to school. Margaret and Nancy, during tax years here in question, spent very little time in Baltimore, the area of the firm's business. When they were there, they discussed the firm's business and did some clerical work for which they were not paid. John was away at school or in the Army until 1948, when he enrolled in Johns Hopkins University in Baltimore. He began in 1948 to assume responsibilities in the firm and has become one of the principal managers of the firm.

The veneer business was good during the tax years in question, the partnership made money, and the three children partners received large amounts of income. The Government taxed that income to the parents, the plaintiffs, and because of the higher brackets applicable to the parents, the tax was much larger.

■ As we have said, we think the children bought their shares in the partnership with their own money which was due them on a preexisting debt. But if their shares were gifts from their parents, made on the day of the formation of the partnership, we think the income from their shares was still their income for all purposes, including income tax purposes.

One may avoid paying taxes on the future income from his property by the drastic remedy of giving away his property. Such a gift may be to anyone at all, certainly including his children. It may be of land, stocks, bonds, or any other kind of property. It may be of a separate interest or an undivided interest. The only question pertinent in an income tax case is whether he really gave the property away, or only pretended to give it away in order to escape or reduce the taxes on the income.

We think the statements which we have just made are applicable to shares in partnerships as well as to other kinds of property, and even if the partnerships are family partnerships. This, we think, is the teaching of Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The Court there said:

"The Tax Court's isolation of 'original capital' as an essential of membership in a family partnership also indicates an erroneous reading of the Tower opinion [Com'r v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670]. We do not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in Helvering v. Clifford, supra [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788]. The facts may indicate, on the contrary, that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes. * * *" 337 U.S. at page 745, 69 S.Ct. at page 1216.

Further, the Court in Culbertson, held in effect that it is not for the Commissioner of Internal Revenue or the courts to review the action of the parties to the partnership agreement, and, if they determine that the contributions of the questioned partners were not worth what they cost the admitted partners in sharing the profits with them, disregard, for tax purposes, the partnership agreement. The Court said:

"* * * But such a determination is not conclusive, and that is the vice in the 'tests' adopted by the Tax Court. It assumes that there is no room for an honest difference of opinion as to whether the services or capital furnished by the alleged partner are of sufficient importance to justify his inclusion in the partnership. If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct the business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. The Tower case did not purport to authorize the Tax

Court to substitute its judgment for that of the parties; it simply furnished some guides to the determination of their true intent. * * *" 337 U.S. at pages 744, 745, 69 S.Ct. at page 1215.

This court's statement in Lieber v. United States, 119 F.Supp. 951, 952, 128 Ct.Cl. 128, 130, "The issue presented is whether the partnerships were real or fictitious" sets the problem with a minimum of words. We conclude that the partnership in the instant case was not fictitious or pretended, and that it should have been treated by the taxing authorities as real.

The plaintiffs are entitled to recover. The amounts of their judgments will be determined in further proceedings under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.